UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MOHAMED LASHEEN,

      Plaintiff,

  v.

THE LOOMIS COMPANY, et al.,

      Defendants.

NO. CIV. S-01-227 LKK/JFM

O R D E R

    The estate of plaintiff Mohamed E. Lasheen ("Lasheen") filed this action in 2001 against the Embassy of the Arab Republic of Egypt, the Arab Republic of Egypt, and the Cultural and Educational Bureau (collectively, "Egyptian defendants"), and the Loomis Company ("Loomis"), who has filed a cross-claim against the Egyptian defendants.  Plaintiff alleges that defendants violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Pending before the court is a joint motion filed by Lasheen and Loomis seeking a determination as to the applicability of the Foreign Sovereign

1

Immunities Act, 28 U.S.C. § 1602 *et seq.* ("FSIA") and, in particular, the waiver and commercial activity exceptions. For the reasons explained below, the motion is granted.

## I. Background

As described more fully in this court's previous orders, Lasheen was a visiting scholar from Egypt, who came to the United States in March 2000 to study horticulture at the University of California at Davis. Lasheen was enrolled in the Embassy of Egypt Health Care Benefits Plan ("the Plan") provided by the Embassy for students. Under the Benefit Services Management Agreement ("Agreement"), Loomis agreed to provide administrative services for the Plan.

Thereafter, Lasheen was allegedly diagnosed with liver cancer. He submitted a claim to Loomis requesting insurance coverage for a liver transplant. Loomis concluded that Lasheen previously suffered from hepatitis C, and that his medical problem was therefore a pre-existing condition not covered by the Plan.

Plaintiff subsequently filed suit in February 2001 against, inter alia, Loomis and the Egyptian Defendants. In November 2005, Loomis filed a cross-claim against the Egyptian defendants for breach of contract arising from their alleged failure to indemnify Loomis' attorneys' fees. Lasheen and Loomis have now reached a settlement agreement, which is conditioned upon their ability to recover against the Egyptian defendants.

When Lasheen and Loomis originally filed the present motion

1  seeking a determination on the applicability of the FSIA, the
2  Egyptian defendants were in default.  Prior to the hearing on
3  the motion, however, the Egyptian defendants filed a request to
4  set aside default.  The court granted that request (but only to
5  the extent necessary to allow the Egyptian defendants to oppose
6  the motion) because the motion pertained to the court's subject
7  matter jurisdiction.

## II. Standard

Given that the pending motion pertains to the court's subject matter jurisdiction, the court applies the standard for a motion to dismiss for lack of subject matter jurisdiction.[1]  A party seeking to invoke the jurisdiction of the federal courts has the burden of establishing that such jurisdiction exists. KVOS, Inc. V. Associated Press, 299 U.S. 269, 278 (1936).  On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge.  Such challenges generally take two forms:  facial attacks or "speaking motions."

In a facial attack, the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction.  Such an attack entitles the plaintiff to safeguards similar to those applicable when a Rule 12(b)(6)

---

[1] Although, procedurally, the Egyptian defendants are the nonmoving party, their position is analogous to one who files a motion to dismiss under Rule 12(b)(1).

3

motion is made.  The court presumes that factual allegations of the complaint are true and grants dismissal only if the plaintiff fails to allege an element necessary for subject matter jurisdiction.  See 2A J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice, ¶ 12.07 (2d ed. 1987); see also Eaton v. Dorchester Development, Inc., 692 F.2d 727, 731 (11th Cir. 1982); Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981), cert. denied, 454 U.S. 897 (1981); Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977).

A "speaking motion" attacks the truth of the jurisdictional facts alleged by the plaintiff and requires the application of a different set of standards.  Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Where the jurisdictional issue is separable from the merits of the case, the district court may hear evidence regarding jurisdiction and rule on that issue prior to trial, resolving factual disputes where necessary.  Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983); Thornhill, 594 F.2d at 733.  "In such circumstances, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'"  Augustine, 704 F.2d at 1077 (quoting Thornhill, 594 F.2d at 733).

> However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination

4

1 | should await a determination of the relevant facts on either a motion going to the merits
2 | or at trial.

3 Augustine, 704 F.2d at 1077 (citing Thornhill, 594 F.2d at 733-
4 35; 5 C. Wright & A. Miller, Federal Practice & Procedure §
5 1350, at 558 (1969 & Supp. 1987)).  On a motion going to the
6 merits, the court must employ the standard applicable to a
7 motion for summary judgment.  Farr v. United States, 990 F.2d
8 451, 454 n.1 (9th Cir. 1993), cert. denied, 510 U.S. 1023
9 (1993).

### III. Analysis

**A. Foreign Sovereign Immunities Act**

The FSIA bars suit against a foreign sovereign nation subject to certain exceptions.  Accordingly, it "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  Argentine Republic v. Amerada Hess Shipping Co., 488 U.S. 428, 443 (1988).  Courts operate under the presumption that the actions of foreign states and their instrumentalities fall within FSIA's protections unless one of its exceptions applies.  Joseph v. Office of the Consulate Gen. of Nig., 830 F.2d 1018, 1021 (9th Cir. 1987) (citing Meadows v. Dominican Republic, 817 F.2d 517, 522 (9th Cir. 1987)).

The party seeking to invoke jurisdiction bears the burden of proving that one of FSIA's exceptions applies.  See Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 707-08 (9th Cir. 1992); In re Republic of Phillipines, 309 F.3d 1143, 1149 (9th Cir. 2002).  Once that party puts forth evidence that a

particular exception applies, the burden then shifts to the party seeking immunity to prove that the exception does not apply. Joseph, 830 F.2d at 1021.

**1. Waiver Exception**

Here, Lasheen and Loomis argue that two exceptions apply. First, under FSIA's waiver exception, a "foreign state [may] waive[] its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). An agreement to adjudicate a dispute in a United States venue or in accordance with the laws of a United States jurisdiction constitutes waiver "by implication" under § 1605(a)(1). See Joseph, 830 F.2d at 1022-23 (holding that "waiver exception should be applied" when (1) "an agreement contemplates adjudication of a dispute by the United States courts" or (2) "a contract specifically states that the laws of a jurisdiction within the United States are to govern the transaction"); Liberian E. Timber Corp. v. Gov't of Liberia, 650 F. Supp. 73, 76 (S.D.N.Y. 1986) (finding waiver by implication where party to contract "contemplated the involvement of the courts of . . . the United States"); Marlowe v. Argentine Naval Comm'n, 604 F. Supp. 703, 708-09 (D.D.C. 1985) (finding waiver by implication where contract "governed by and construed in accordance with the laws of the District of Columbia" was at issue).

Here, the Agreement between Loomis and the Egyptian defendants contains a provision that constitutes waiver by implication. Specifically, the Agreement states that it "shall

be enforced under the laws of the Commonwealth of Pennsylvania." Decl. of John Pierce ("Pierce Decl."), Ex. D at 5. Under Joseph, this language waives any claim to immunity.[2] 830 F.2d at 1022.

The Egyptian defendants assert -- for the first time since this litigation was commenced seven years ago -- that there is no proof that the person who signed the Agreement was authorized to do so by the Egyptian government.[3] Given that this is both a jurisdictional and substantive issue, the court employs a summary judgment standard. Farr, 990 F.2d at 454 n.1. Summary judgment is appropriate when there is no genuine issue of material fact. Fed. R. Civ. P. 56. The party opposing summary judgment, however, "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).

Here, Lasheen and Loomis have tendered the Agreement

---

[2] The Egyptian defendants misread Joseph's hesitation "to rest [its] holding . . . solely on the waiver exception." Joseph, 830 F.2d at 1023, n.6. There, the court's concern stemmed from "the vagueness of the waiver provision at issue," which failed to specify which jurisdiction's law would govern disputes. Id. at 1023. Here, however, the Agreement between Loomis and the Egyptian defendants explicitly states that the law of a United States jurisdiction controls.

[3] The court will assume, for purposes of argument, that this issue has not been waived.

7

itself, which references by name the "Cultural Educational Bureau, Embassy of Egypt" on its first and last page. Pierce Decl. Ex. D. at 1, 5. The title of "counselor" also appears below the signature line of the Agreement. The Egyptian defendants have not disputed the authenticity of this document, nor do they offer an alternate explanation as to how a document naming them as co-parties to an agreement would come into existence. Perhaps more telling, in their original answer to the complaint (which the court subsequently struck due to defendants' failure to appear through counsel at a status conference), the Egyptian defendants admitted that "Loomis is the Benefits Service manager of the benefit plan for the Cultural and Educational Bureau, Embassy of Egypt." Loomis also contends that the Egyptian defendants directed it to act under the Agreement, and that (as provided for in the Agreement) they paid for Loomis' legal fees (although they have failed to do so since July 2005).

The Egyptian defendants' argument here is precisely the sort of attempt to "show that there is some metaphysical doubt as to the material facts" that would not be sufficient to defeat summary judgment. See Matsushita, 475 U.S. at 586-87. In light of what appears to be a valid agreement and the Egyptian defendants' judicial admissions and conduct, the unsupported speculation regarding the Agreement's signatory does not constitute a genuine dispute. Accordingly, the court finds that FSIA's waiver exception applies to the cross-claim filed by

Loomis against the Egyptian defendants.

### 2. "Commercial Activity" Exception

Second, under FSIA's "commercial activity" exception, foreign states are not entitled to immunity "where [] action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). FSIA further defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d).

In distinguishing between commercial and non-commercial acts, "a state engages in commercial activity . . . where it exercises only those powers that can also be exercised by private citizens, as distinct from peculiar sovereigns." Saudia Arabia v. Nelson, 507 U.S. 349, 360 (1993) (citations and quotations omitted). The act need not be motivated by profit to be "commercial" under FSIA, but instead must only be "the type of action[] by which a private party engages in 'trade and traffic or commerce.'" Republic of Arg. v. Weltover, Inc., 504 U.S. 607, 614 (1992) (quoting Black's Law Dictionary 270 (6th Ed. 1990)). Conversely, a foreign state's activities are "noncommercial" if they are of the kind that "only a sovereign state can perform." Joseph, 830 F.2d at 1024 (citing Meadows, 817 F.2d at 523)).

For example, the revocation of a license for the extracting of natural resources is not "commercial activity," see Mol, Inc. v. Peoples Republic of Bangl., 736 F.2d 1326, 1328-29 (9th Cir.

1984), cert. denied, 469 U.S. 1037 (1984), but a country's restructuring of debts in the United States bond market is, Weltover, 504 U.S. at 615-16.  If a foreign state acts "not as a regulator of a market, but in the manner of a private player within it," that activity is "commercial" under FSIA even if engaged in for the benefit of a foreign state's citizens. Weltover, 504 U.S. at 614.

The Agreement between Loomis and the Egyptian defendants is the type of activity that a private party could also undertake. See id.  The Agreement states that Loomis would provide "administrative services" regarding the Egyptian defendants' Health Care Benefits Plan.  Private companies often make similar arrangements; undertaking such conduct does not require the exercise of the power of a sovereign nation.  See Joseph, 830 F.2d at 1024; Meadows, 817 F.2d at 523.  The court therefore finds that the Agreement between Loomis and the Egyptian defendants falls within FSIA's "commercial activity" exception.[4]

////
////

---

[4] The Egyptian defendants also argue that Lasheen was a civil servant of the Egyptian government and that the complained of conduct was therefore governmental rather than commercial.  See Holden v. Canadian Consulate, 92 F.3d 918, 921 (9th Cir. 1996); El-Hadad v. United Arab Emirates, 496 F.3d 658, 664 n.2 (D.C. Cir. 2007) (noting that Holden "treats the civil servant question as effectively superseding the commercial/governmental distinction"). But, as with the waiver exception, the moving parties have only argued that the commercial activity exception applies to the Agreement between *Loomis* and the Egyptian defendants. Accordingly, the court does not reach the issue of whether the Egyptian defendants are entitled to sovereign immunity against Lasheen.

**B. Statute of Limitations**

The Egyptian defendants also contend that Loomis' breach of contract cross-claim is time-barred under either Pennsylvania and California law, both of which have a four year statute of limitations.[5] See Cal. Civ. Proc. Code § 337; Pa. Cons. Stat. § 5525(a)(8). But, as stated in the January 3, 2008 order, the court has set aside default only to permit briefing on the applicability of FSIA's exceptions -- not with respect to any other issue in this case, including a statute of limitations defense.

Even if the court were to rule on the argument, however, it would fail. As noted above, the cross-claim was filed on November 2005 and alleges breach of contract arising from the Egyptian defendants' alleged failure to indemnify Loomis' attorneys' fees. According to Loomis, the Egyptian defendants paid for attorneys' fees until July 2005, and the only unpaid attorneys' fees were incurred after that point in time. Accordingly, the cross-claim was filed well within a four year statute of limitations.

With regard to a duty to indemnify for damages, under both California and Pennsylvania law, a claim for indemnification begins to accrue at the time the indemnitee makes actual payment to a third party. See Rubin Quinn Moss Heaney & Patterson v. Kennel, 832 F. Supp. 922, 931 (E.D. Pa. 1993); Lantzy v. Centex

---

[5] The court makes no finding as to the applicable law governing Loomis' breach of contract claims.

11

Homes, 31 Cal. 4th 363, 378 n.12 (2003); see also States Steamship Co. v. Am. Smelting & Ref. Co., 339 F.2d 66, 70 (9th Cir. 1965) (citations omitted).  Accordingly, the statute of limitations for indemnification of Loomis' prospective settlement with Lasheen would begin to run only upon payment of that settlement to Lasheen.

### IV. Conclusion

For the reasons explained above, the joint motion regarding the inapplicability of the Foreign Sovereign Immunities Act to the Egyptian defendants is GRANTED.

IT IS SO ORDERED.

DATED: February 1, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT