IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOHAMMED E. LASHEEN,

      Plaintiff,

  vs.

THE LOOMIS COMPANY, et al.,

      Defendants.

                      /

AND RELATED CROSS CLAIM

                      /

No. CIV S-01-0227 LKK EFB

FINDINGS & RECOMMENDATIONS

       This case was referred to the undersigned pursuant to Local Rule 72-302(c)(19). *See* 28 U.S.C. § 636(b)(1). Pending before the court are motions for entry of default judgment filed by defendant and cross-claimant, The Loomis Company ("Loomis") and the personal representative of plaintiff, Mohammed E. Lasheen. Having considered both motions for entry of default judgment, the court issues the following findings, and recommends that the motions be denied without prejudice to renewal upon submission of further briefing and evidence, as set forth below.

**I.  BACKGROUND**

       Plaintiff, Mohammed E. Lasheen ("Lasheen"), was an Egyptian citizen who came to the United States in 2000 as a visiting scholar at the University of California, Davis. Lasheen was

1

enrolled in the Embassy of Egypt Health Care Benefits Plan ("Plan") provided through the Embassy. Under the Benefit Services Management Agreement ("Agreement"), Loomis agreed to provide administrative services for the Plan.

While Lasheen was in the United States, he was diagnosed with liver cancer. Lasheen's physicians determined that he needed a liver transplant, but when he submitted a claim to Loomis requesting coverage for the procedure, the claim was denied. Loomis took the position that Lasheen's previous diagnosis with Hepatitis C constituted a preexisting condition with respect to his cancer and related problems, and that the transplant was therefore not covered under the Plan. After unsuccessful attempts to challenge that decision, plaintiff died on December 3, 2000. Plaintiff is survived by his wife and three children.

Lasheen's estate filed this action in February 2001 against, among others, the the Arab Republic of Egypt, the Embassy of the Arab Republic of Egypt, and the Cultural and Educational Bureau (collectively, the "Egyptian defendants"), and Loomis.[1] Plaintiff alleged claims pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*., and for breach of contract and fiduciary duties.

On April 17, 2001, default was entered against the Egyptian defendants for failure to answer or otherwise timely respond to the complaint. *See* docket entry nos. 21, 22. On June 5, 2003, the Egyptian defendants moved to set aside the entry of default. On July 16, 2003, the district judge determined that default was entered prematurely, as these defendants were entitled to sixty days to serve an answer under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, *et seq*. *See* July 16, 2003, Order (docket no. 80). While the court was troubled by the Egyptian defendants' two-year delay in moving to set aside the default, the court granted their motion in the interest of deciding the case on its merits. *Id*. Accordingly, the defaults were

---

[1] Plaintiff settled his claims with the other named defendants, United Payors & United Providers and BCE Emergis, both of which were dismissed on February 10, 2006. *See* docket no. 205.

2

vacated and the Egyptian defendants filed an answer on September 4, 2003.

Loomis continued to defend against Lasheen's claims, and the Egyptian defendants indemnified it for its legal fees and costs, up to and through July 2005. *See* Declaration of John S. Pierce in Support of the Loomis Company's Application for Default Judgment ("Pierce Decl."), ¶¶ 12-15. The reimbursements were made pursuant to the terms of the Agreement, which provides that the Egyptian defendants were to indemnify Loomis for expenses "occasioned by claims, demands or lawsuits brought against Loomis to recover benefits under [the Plan]." Pierce Decl., ¶¶ 12, 13; Exh. D, p. 4. When the Egyptian defendants stopped reimbursing Loomis, Loomis continued to defend against Lasheen's lawsuit and provided them with updates regarding the litigation, including notice of a pending settlement with Lasheen. *Id.*, ¶ 18. The Egyptian defendants continued to refuse to indemnify Loomis further, and on November 30, 2005, Loomis filed a cross-claim against them for breach of contract. The Egyptian defendants did not file an answer or otherwise respond to the cross-complaint.

On November 7, 2005, the court allowed the attorney for the Egyptian defendants to withdraw as counsel of record. The court also directed the parties to appear at a December 19, 2005, status conference. Only counsel for Loomis appeared at that conference. *See* docket no. 196. In light of the Egyptian defendants' failure to appear, district judge ordered that the Egyptian defendants' September 4, 2003, answer to the complaint be stricken, and directed the Clerk to enter default against them with respect to both the complaint and the cross-claim. He further directed both Loomis and Lasheen to move for default judgment. *See* March 2, 2006, Order (docket no. 221).

Before they could do so, the case was administratively terminated pending an appeal by Loomis with respect to the denial of its summary judgment motion regarding the alleged lack of subject matter jurisdiction over plaintiff's claims. *See* March 22, 2006, Order (docket no. 229). Specifically, Loomis appealed the district court's order finding that it had jurisdiction and that ERISA's exception for foreign plans was not applicable in this case. Pursuant to the parties'

1  stipulation, the appeal was dismissed without prejudice to reinstatement, pending approval of the
2  parties' tentative settlement agreement.  *See* August 6, 2007, Order (docket no. 238).
3       On November 6, 2007, Loomis and Lasheen filed a joint special motion requesting the
4  court to find that the Egyptian defendants had no immunity to suit due to the inapplicability of
5  FSIA in this case.  On December 5, 2007, the Egyptian defendants suddenly reinserted
6  themselves into the case by filing an *ex parte* request for additional time to oppose the joint
7  special motion.
8       On December 7, 2007, the district judge ordered the Egyptian defendants to show cause
9  why sanctions should not issue for the delay and inconvenience and advised them that, in order
10 to contest the joint motion, they would first have to move to set aside the default previously
11 entered against them.
12      On December 19, 2007, the Egyptian defendants moved to set aside the default and
13 responded to the order show cause.  They argued that they were never properly served, and that
14 as a result of such improper service, "a former attaché of the Egyptian Cultural Office was led to
15 believe that counsel had been retained by an insurance broker who ostensibly acted as an
16 intermediary between" it and Loomis.  It further argued that it was immune from suit under
17 FSIA.  *See* Response to the Court's Order Show Cause and Motion to Set Aside Default, 2:3-6
18 (docket no. 255).
19      On January 3, 2008, the district judge found that the Egyptian defendants had waived any
20 objection to service long ago, and granted their request to set aside default only to the extent
21 necessary to allow them to oppose the jurisdictional motion.  The judge denied the motion to set
22 aside default in all other respects.  *See* January 3, 2008, Order (doc. no. 261).  On February 1,
23 2008, the district judge granted the joint motion filed by Loomis and Lasheen, and found that the
24 Egyptian defendants were not immune from suit given the inapplicability of FSIA in this case.
25 ////
26 ////

1  The Egyptian defendants appealed that order, and Loomis and Lasheen moved for entry of

2  default judgment against them.[2]  Both applications for default judgment were served on the

3  Egyptian defendants as required under Fed. R. Civ. P. 55(b)(2).

**II. DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk is required to enter default when the fact of default is established by affidavit or otherwise. Fed. R. Civ. P. 55(a). In this case, default was entered by the Clerk on March 2, 2006. Now before the court are the applications for entry of default judgment by Loomis and Lasheen against the Egyptian defendants pursuant to Fed. R. Civ. P. 55(b)(2).

A. Standard

It is within the sound discretion of the district court to grant or deny a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

B. Loomis' Motion

As set forth above, default was entered against the Egyptian defendants on March 2, 2006, with respect to Loomis' cross-complaint. On March 19, 2008, the court heard Loomis' motion for entry of default judgment against the Egyptian defendants. The Egyptian defendants filed an opposition to the motion on March 12, 2008, but failed to appear at the hearing. The court deems such failure a withdrawal of the opposition. *See* Local Rule 78-230(j) ("[a]bsent

---

[2] The appeal is still pending before the Ninth Circuit. *See* n. 4.

notice of intent to submit the matter on the briefs, failure to appear may be deemed withdrawal of the motion or of opposition to the motion, in the discretion of the Court, or may result in the imposition of sanctions.").[3]

Turning to the *Eitel* factors, the court finds that Loomis would be prejudiced if default judgment were not entered in its favor. This case has been ongoing since 2001. Pursuant to the Agreement, up until July 2005, Loomis had been reimbursed by the Egyptian defendants for fees and expenses incurred in defending against Lasheen's claims. Since that time, the Egyptian defendants have been conspicuously absent from the litigation, and now claim that no judgment may be entered against them on the basis of FSIA. The Egyptian defendants' repeated delays and failure to participate in this litigation indicate a strong likelihood that Loomis would encounter significant difficulties in litigating its claims against them, on the merits, in any other action. Thus, the first *Eitel* factor weighs in Loomis' favor.

The second and third factors also weigh in Loomis' favor. As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to the damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted).

Here, the cross-complaint seeks declaratory judgment establishing that the Egyptian defendants are obligated under the Agreement to reimburse Loomis for all costs, expenses and legal fees incurred by Loomis in defense of the underlying action. Loomis asserts a related claim for breach of that Agreement. The facts as plead by Loomis establish that, under the terms of the Agreement, the Egyptian defendants were obligated to indemnify Loomis for expenses, including attorneys' fees, "occasioned by claims, demands or lawsuits brought against Loomis to recover benefits under [the Plan]." *See* Pierce Decl., ¶¶ 12, 13; Exh. D thereto, at p. 4. Indeed,

---

[3] In any event, the opposition does not specifically oppose the application for default judgment. Rather, it focuses on the appropriateness and timeliness of its appeal of the district judge's most recent order regarding jurisdiction. *See* n. 4.

6

the Egyptian defendants had satisfied that obligation up to and through July 2005. Pierce Decl., ¶¶ 14, 15.

The fourth *Eitel* factor, the sum of money at stake, does not weigh clearly in either party's favor. The amount of fees and costs sought by Loomis under the Agreement in total is $227,999.70. While Loomis has established that it is entitled to fees under the terms of the Agreement, the Egyptian defendants face having that not insignificant amount entered against them as a judgment.

With regard to the fifth factor, no genuine issue of material fact exists because the allegations in the complaint are taken as true. *TeleVideo Systems*, 826 F.2d at 917-18. The sixth factor also weighs in Loomis' favor. The district judge has already considered and denied the Egyptian defendants' motion to set aside the default entered against them.

Finally, only the seventh *Eitel* factor clearly weighs against granting the motion for default judgment. The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits. *Eitel*, 782 F.2d at 1472. Nonetheless, where a defendant fails to file an answer to the complaint, a decision on the merits is "impractical, if not impossible." *Elektra Ent. Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (citations omitted). Given the Egyptian defendants' failure to respond to the cross-complaint, and their almost two-year delay in making an appearance after the second entry of default was entered against them, the court finds that this factor should not preclude entry of default judgment. *Id.*, at 393. Thus, on balance, the factors weigh in favor of granting Loomis' motion for entry of default judgment.

However, although Loomis has established that it is entitled to judgment, the court is presently unable to recommend that the specific amount requested by Loomis be entered as judgment against the Egyptian defendants. Loomis seeks contractual damages pursuant to the indemnification clause of the Agreement, which covers attorneys' fees, costs and other expenses resulting from Lasheen's suit. The amount of attorneys' fees sought by Loomis under the Agreement is $202,999.70. Pierce Decl., ¶¶ 19, 20. Loomis also seeks $25,000 that it has paid

7

1  to Lasheen in settlement of this matter.  *Id*., ¶ 20.  Thus, Loomis seeks default judgment on its
2  cross-complaint in the amount of $227,999.70.  *Id*., ¶ 21.

3     The Agreement between Loomis and the Egyptian defendants contains a choice of law
4  provision stating that it is to "be enforced under the Commonwealth of Pennsylvania."  Pierce
5  Decl., Exh. D, p. 5.  However, Loomis has provided no briefing on what, if any, bearing
6  Pennsylvania law has on the calculation of attorneys' fees under the indemnification clause, or
7  whether the court is required to apply the lodestar method before awarding the fees Loomis
8  claims pursuant to that clause.  *See Berg Chilling Sys. v. Hull Corp*., No. 00-5075, 2005 U.S.
9  Dist. LEXIS 414, at * 6-7 (E.D. Pa. Jan. 11, 2005) (noting that courts have employed the lodestar
10  method to attorneys' fees awards under indemnity contracts, and applying that method) (citing
11  *Natco Ltd. P'ship v. Moran Towing of Fla*., 267 F.3d 1190, 1196 (11th Cir. 2001) and *Peter*
12  *Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 319 (2d Cir. 1985)); *but see Fed. Agric. Mortgage*
13  *Corp. v. It's a Jungle Out There, Inc*., No. C-03-3721 BZ, 2006 U.S. Dist. LEXIS 31648, at *10
14  (N.D. Cal. May 9, 2006) (provision including attorney's fees as an item of loss in an indemnity
15  clause is *not* a provision for attorney's fees that would trigger the California statute requiring
16  review for reasonableness) (citing *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App.
17  4th 949, 97 (Cal. Ct. App. 1993)).

18     To the extent the court is required to examine the reasonableness of the fees claimed by
19  Loomis under the Agreement's indemnity provision (either pursuant to the lodestar or some
20  other method), it has insufficient information to do so at present.  Although Loomis' counsel has
21  presented an affidavit showing the total amount of fees incurred on specific days, *see* Pierce
22  Decl., ¶¶ 19-20, counsel has failed to provide evidence regarding the hourly rates of the
23  attorneys who worked on those days, or information regarding the reasonableness of those rates.
24  *See Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973 (9th Cir. 2008) (lodestar calculation requires
25  evidence of a reasonable rate, based on the relevant community and the prevailing hourly rate in
26  that community for similar services by attorneys of comparable skill and experience).

Accordingly, the court recommends that Loomis' motion for default judgment be denied without prejudice to renewal upon submission of further briefing and evidence, consistent with the foregoing.

C. Lasheen's Motion

As set forth above, default was entered against the Egyptian defendants with respect to the original complaint on March 2, 2006. On April 16, 2008, the court heard Lasheen's motion for entry of default judgment. The Egyptian defendants filed an opposition to the motion on March 12, 2008, and John Hermina appeared on their behalf.[4] Counsel for Lasheen and Loomis were also present. At the hearing, the Egyptian defendants' primary argument against entry of default judgment was the pending appeal regarding the applicability of FSIA. Again, that appeal does not prevent this court from entering the following findings and recommendations. *See* n. 4, *supra*.

Turning to the *Eitel* factors, the court finds that Lasheen would be prejudiced if default judgment were not entered in his favor. This case has been ongoing since 2001, during which time the Egyptian defendants have twice allowed default to be entered against them. They have been conspicuously absent from the litigation, and now claim that no judgment may be entered against them on the basis of FSIA. The Egyptian defendants' repeated delays and failure to participate in this litigation indicate a strong likelihood that Lasheen would not have another

---

[4] The March 12, 2008, opposition appears to be directed at the application for default judgment filed by Loomis. In it, the Egyptian defendants merely counter Loomis' assertion that their appeal of the district judge's January 3, 2008, order was untimely. While it appears that their appeal was properly taken, *see Gupta v. Thai Airways Int'l, LTD*, 487 F.3d 759, 763-64 (9th Cir. 2007) (orders regarding the applicability of FSIA are appealable under the collateral order doctrine), that has no bearing on the present motions. *See Britton v. Co-op Banking Group*, 916 F.2d 1405, 1411 (9th Cir. 1990) ("Absent a stay, an appeal seeking review of collateral orders does not deprive the trial court of jurisdiction over other proceedings in the case, and an appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal.") (citations omitted). Here, the court does not consider the applicability of FSIA's, the subject of the appeal. Rather, it makes recommendations regarding the appropriateness of default judgment. Further, these findings and recommendations do not constitute a final order until and unless they are adopted by the district judge.

9

meaningful opportunity to litigate his claims against them on the merits. Thus, the court finds that the first *Eitel* factor weighs in Lasheen's favor.

The second and third factors also weigh in Lasheen's favor, to the extent discussed below. As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to the damages. *TeleVideo Systems, Inc.*, 826 F.2d at 917-18.

Here, the complaint filed by Lasheen states claims against the Egyptian defendants under ERISA for wrongful withholding of plan benefits. *See* 29 U.S.C. § 1132(a)(1)(B) (authorizing a participant or beneficiary to bring a civil action to recover benefits due to him under the terms of his plan, or to enforce his rights under the terms of the plan). *See* Complaint ("Compl."), ¶¶ 1, 5, 9-15; Application for Default Judgment By Court ("Lasheen's Brief"), 14:7-28; Declaration of Randy M. Andrus in Support of Application for Default Judgment by Court ("Andrus Decl."), Exh. D thereto. Plaintiff was a participant and beneficiary under the Plan, which Lasheen claims had a lifetime maximum benefit in the amount of $200,000. *See* Lasheen's Brief, 14:7-28. However, upon examination of the Plan, it is unclear from the complaint and briefing whether Lasheen was enrolled as a "student" (maximum lifetime benefit of $200,000) or as a "teacher" (maximum lifetime benefit of $100,000). *See* Andrus Decl., Exh. D, pp. 3-4.

Plaintiff presents evidence showing that the liver transplant he needed was estimated to cost $250,000, and that he incurred other medical expenses in excess of $41,500. *See id.*, Exhs. E, G, K. Plaintiff seeks judgment in the amount of $200,000 for benefits wrongfully denied under the Plan, based on these expenses (both estimated and actual) and the alleged maximum benefit. However, because it is unclear which benefit applies, the court cannot at this time recommend default judgment in the amount sought. While it otherwise appears that plaintiff has stated a claim under this section of ERISA, the court will not recommend that judgment be

////

////

10

entered until further briefing is submitted to clarify this point.[5]

With respect to plaintiff's request that the judgment include $82,400 for "other appropriate relief and penalties," the court recommends against such judgment. Plaintiff makes this request pursuant to 29 U.S.C. § 1132(c)(1), which provides that any administrator who fails to comply "with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary" within 30 days may, in the court's discretion, be liable to such participant or beneficiary in an amount up to $110 per day from the date of such failure." 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1. In the complaint, plaintiff fails to point to a statute requiring defendants to furnish particular documents to plaintiff, nor does he allege a failure to produce such documents. As such, plaintiff has failed to state a claim under 29 U.S.C. § 1132(c)(1). Accordingly, the court recommends against entry of default judgment with respect to this provision under the second and third *Eitel* factors.

Plaintiff also seeks pre-judgment interest and attorneys' fees and costs. The complaint's plea for relief includes a request for "prejudgment interest at the maximum rate allowed by law," and "attorney's fees, court costs, and all other reasonable costs incurred." Compl., 5:15-19.

The court "may award prejudgment interest on an award of ERISA benefits at its discretion." *Blankenship v. Liberty Life Assur. Co.*, 486 F.3d 620, 627-28 (9th Cir. 2007) (citations omitted). "Generally, the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Id.* (internal quotations omitted). Here, plaintiff requests interest in the amount of the 52-week T-Bill rate, compounded annually, as allowed under § 1961. Specifically, he seeks interest on the $200,000 policy amount at a rate of three percent, compounded annually, for a total of $50,685.27. *See* Lasheen's Brief, 20:12-28. However, plaintiff provides no support for his

---

[5] Accordingly, the court does not reach the remaining *Eitel* factors here.

assertion that the 52-week T-Bill rate to be applied is three percent. Nor does he explain how he arrived at that figure, or whether it should be applied uniformly from the date the action was initiated to present, or pursuant to some other method.

Accordingly, the court will recommend denying plaintiff's request for this relief without prejudice to renewal upon submission of further briefing and evidence. Likewise, the court also recommends denial without prejudice as to plaintiff's request for attorneys' fees pending submission of further briefing and evidence as set forth below.

It is within the court's discretion to grant an award of attorneys' fees in an ERISA case, and absent special circumstances, a prevailing ERISA plaintiff normally should receive such fees. *McConnell v. MEBA Medical & Ben. Plan*, 778 F.2d 521, 525 (9th Cir. 1985). The court considers five factors in exercising its discretion under section 1132(g)(1):

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*McConnell*, 778 F.2d at 525 (quoting *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)).

Here, based on the allegations in the complaint, the Egyptian defendants acted in bad faith in denying plaintiff coverage due under the Plan. Compl., ¶¶ 10-15. Indeed, there is some indication that plaintiff's death appears to have been accelerated, if not caused, by his inability to receive a liver transplant. There is nothing in the record to indicate that the Egyptian defendants will be unable to pay an award of fees. With respect to the third factor, an award of fees may discourage the Egyptian defendants from similar conduct (i.e., repeated delays and failure to prosecute) under similar circumstances in the future. With regard to the fourth factor, while plaintiff was not seeking to benefit all participants and beneficiaries of this particular ERISA

12

plan, the court has nonetheless had to decide relatively novel issues regarding the applicability of ERISA and FSIA with respect to the Plan.  The clarification on these issues indirectly benefits others covered by the Plan.  Finally, in light of the record before the court, the Egyptian defendants, to the extent they have appeared to defend their position, have not succeeded in that regard.  In sum, the *Hummell* factors weigh in favor granting plaintiff his attorneys' fees.  However, the court finds that it cannot recommend a specific amount of fees as part of the judgment based on the present record.

To calculate attorney's fees in an ERISA action, courts use a two-step hybrid lodestar/multiplier approach.  *Van Gerwen v. Guarantee Mut. Life. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).  First, the court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Id*.  The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed.  *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  In determining the appropriate lodestar amount, the district court should exclude from the lodestar amount any hours that are "excessive, redundant, or otherwise unnecessary."  *Id*.  "Second, a court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar."  *Id.*

Here, plaintiff requests reimbursement for work based on an hourly rate of $250 for lead counsel, Mr. Andrus, $150 for associate attorneys at his firm, and $100 for paralegal and assistant work.  While these rates appear to be reasonable, the court lacks sufficient information to make that finding.  For example, plaintiff fails to identify the relevant community and the prevailing hourly rate in that community for similar services by attorneys of comparable skill and experience.  *See Camacho*, 523 F.3d 973.  Further, the hours averred to by plaintiff's counsel do not refer to the dates on which the services were rendered.  Without such information, the court could improperly award fees to which plaintiff is not entitled.  *See, e.g., Cann v. Carpenters' Pension Trust Fund for Northern California*, 989 F.2d 313, 317 (9th Cir. 1993)

13

(fees for time spent in the pre-litigation administrative phase cannot be recovered under § 1132(g)(1)).

Accordingly, the court declines to recommend a judgment including a specific amount for attorneys' fees, but does so without prejudice to renewal upon submission of additional briefing and evidence.

**IV. CONCLUSION**

In accordance with the foregoing, IT IS RECOMMENDED that:

1. The application for entry of default judgment filed by Loomis be denied without prejudice to renewal upon submission of additional briefing and evidence findings and recommendations; and,

2. The application for entry of default judgment filed by Lasheen be denied without prejudice to renewal upon submission of additional briefing and evidence consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: July 21, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14