IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOHAMMED E. LASHEEN,

      Plaintiff,

  vs.

THE LOOMIS COMPANY, et al.,

      Defendants.
_____/

AND RELATED CROSS CLAIM
_____/

No. CIV S-01-0227 LKK EFB

<u>FINDINGS AND RECOMMENDATIONS</u>

This matter was referred to the undersigned pursuant to Local Rule 302(c)(19). *See* 28 U.S.C. § 636(b)(1). Defendant and cross-claimant, The Loomis Company ("Loomis"), moves for entry of default judgment against the Arab Republic of Egypt, the Embassy of the Arab Republic of Egypt, and the Cultural and Educational Bureau (collectively, the "Egyptian defendants"). For the reasons stated below, the undersigned recommends that the motion be granted.

I. <u>BACKGROUND</u>

Plaintiff, Mohammed E. Lasheen ("Lasheen"), was an Egyptian citizen who came to the United States in 2000 as a visiting scholar at the University of California, Davis. Lasheen was enrolled in the Embassy of Egypt Health Care Benefits Plan ("Plan") provided through the

Embassy. Under the Benefit Services Management Agreement ("Agreement"), Loomis agreed to provide administrative services for the Plan.

While Lasheen was in the United States, he was diagnosed with liver cancer. Lasheen's physicians determined that he needed a liver transplant, but when he submitted a claim to Loomis requesting coverage for the procedure, the claim was denied. Loomis took the position that Lasheen's previous diagnosis with Hepatitis C constituted a preexisting condition with respect to his cancer and related problems, and that the transplant was therefore not covered under the Plan. After unsuccessful attempts to challenge that decision, plaintiff died on December 3, 2000. Plaintiff is survived by his wife and three children.

Lasheen's estate filed this action in February 2001 against, among others, the Egyptian defendants and Loomis. Plaintiff alleged claims pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, and for breach of contract and fiduciary duties.

On April 17, 2001, default was entered against the Egyptian defendants for failure to answer or otherwise timely respond to the complaint. *See* Dckt. Nos. 21, 22. On June 5, 2003, the Egyptian defendants moved to set aside the entry of default judgment. On July 16, 2003, the district judge determined that default was entered prematurely, as these defendants were entitled to sixty days to serve an answer under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, *et seq*. *See* July 16, 2003 Order, Dckt. No. 80. While the district judge was troubled by the Egyptian defendants' two-year delay in moving to set aside the default, the court granted their motion in the interest of deciding the case on its merits. *Id*. The defaults were vacated and the Egyptian defendants filed an answer on September 4, 2003.

Loomis continued to defend against Lasheen's claims, and the Egyptian defendants reimbursed it for legal fees and costs associated with that litigation, up to and through July 2005. *See* Pierce Decl., Dckt. No. 309-2, ¶¶ 2-3. The reimbursements were made pursuant to the terms of the Agreement, which provides that the Egyptian defendants were to indemnify Loomis for

expenses "occasioned by claims, demands or lawsuits brought against Loomis to recover benefits under [the Plan]." *Id.* ¶ 2; Ex. J at 4. When the Egyptian defendants stopped reimbursing Loomis, Loomis continued to defend against Lasheen's lawsuit and provided them with updates regarding the litigation, including notice of a pending settlement with Lasheen. *Id.* ¶ 3. The Egyptian defendants continued to refuse to indemnify Loomis further, and on November 30, 2005, Loomis filed a cross-claim against them for breach of contract. The Egyptian defendants did not file an answer or otherwise respond to the cross-complaint.

On November 7, 2005, the district judge allowed the attorney for the Egyptian defendants to withdraw as counsel of record, and directed the parties to have counsel appear at a December 19, 2005, status conference. Only counsel for Loomis appeared at that conference. *See* Dckt. No. 196. In light of the failures to respond or to appear as ordered, on March 2, 2006, the district judge ordered that the Egyptian defendants' September 4, 2003, answer to the complaint be stricken, and directed the Clerk to enter default against them with respect to both the complaint and the cross-claim. The court further directed both Loomis and Lasheen to move for default judgment. *See* March 2, 2006 Order, Dckt. No. 221.

Before they could do so, the case was administratively terminated pending an appeal by Loomis with respect to the denial of its summary judgment motion regarding the alleged lack of subject matter jurisdiction over plaintiff's claims. *See* March 22, 2006 Order, Dckt. No. 229. Specifically, Loomis appealed the district court's order finding that it had jurisdiction and that ERISA's exception for foreign plans was not applicable in this case. Pursuant to the parties' stipulation, the appeal was dismissed without prejudice to reinstatement, pending approval of the parties' tentative settlement agreement. *See* August 6, 2007 Order, Dckt. No. 238.

On November 6, 2007, Loomis and Lasheen filed a joint special motion requesting the court to find that the Egyptian defendants had no immunity to suit due to the inapplicability of FSIA in this case. On December 5, 2007, the Egyptian defendants abruptly reinserted themselves into the case by filing an *ex parte* request for additional time to oppose the joint

3

special motion.

On December 7, 2007, the district judge ordered the Egyptian defendants to show cause why sanctions should not issue for the delay and inconvenience and advised them that, in order to contest the joint motion, they would first have to move to set aside the default previously entered against them.

On December 19, 2007, the Egyptian defendants moved to set aside the default and responded to the order show cause. They argued that they were never properly served, and that as a result of such improper service, "a former attaché of the Egyptian Cultural Office was led to believe that counsel had been retained by an insurance broker who ostensibly acted as an intermediary between" it and Loomis. It further argued that it was immune from suit under FSIA. *See* Dckt. No. 355 at 2.

On January 3, 2008, the district judge found that the Egyptian defendants had waived any objection to service long ago, and granted their request to set aside default only to the extent necessary to allow them to oppose the jurisdictional motion. The judge denied the motion to set aside default in all other respects. *See* January 3, 2008 Order, Dckt. No. 261.[1] On February 1, 2008, the district judge granted the joint motion filed by Loomis and Lasheen, and found that the Egyptian defendants were not immune from suit given the inapplicability of FSIA in this case. In that order, the court held that the Agreement between Loomis and the Egyptian defendants constituted a waiver of sovereign immunity as to claims brought by Loomis, and the court further held that the Egyptian defendants' contract with Loomis constituted "commercial activity" outside the scope of the FSIA. *Id.* at 6, 10. The court noted that "the moving parties ha[d] only argued that the [exceptions] applie[d] to the Agreement between Loomis and the Egyptian defendants. Accordingly, the court [did] not reach the issue of whether the Egyptian

---

[1] The district judge explained that he "set[] aside default only with respect to the Foreign Sovereign Immunities Act issue; the Egyptian defendants ha[d] not demonstrated good cause to set aside default as to any other aspect of the case." Dckt. No. 261.

4

defendants [were] entitled to sovereign immunity against Lasheen." *Id*. at 10 n.4.  Nonetheless, the court granted the joint motion in full.

The Egyptian defendants appealed that order, and Loomis and Lasheen moved for entry of default judgment against them.  The undersigned held a hearing on the default judgment motion on April 16, 2008, and on July 22, 2008, issued findings and recommendations, stating that Loomis was entitled to default judgment against the Egyptian defendants but recommending denial of the motion without prejudice because the court could not determine, from the evidence presented, whether Loomis was entitled to the specific amount it requested.  Dckt. Nos. 296, 297.  The district judge adopted the findings and recommendations on September 23, 2008.  Dckt. No. 298.

On May 10, 2010, the Ninth Circuit issued an opinion affirming the district judge's determination that the Egyptian defendants were not immune to Loomis's claims because of the commercial activity exceptions to the FSIA.  Dckt. No. 301; *Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d 1166, 1169 (9th Cir. 2010).  The Ninth Circuit did not reach the district judge's alternate holding regarding waiver.  *Id*. at 1171-72.  The Ninth Circuit remanded to this court for a determination as to "whether either the commercial activities or waiver exception permits Lasheen's claims to proceed."  *Id.* at 1172; Dckt. No. 302.  Therefore, on July 8, 2010, the district judge issued an order setting forth a briefing schedule on the issue.  Dckt. No. 306.

On August 2, 2010, the Egyptian defendants filed a motion to dismiss and/or for summary judgment.  Dckt. No. 307.  On September 1, 2010, the district judge issued an order stating that Lasheen had met his burden of establishing that the Egyptian defendants had waived FSIA immunity.  Dckt. No. 312.  The district judge further stated that "Insofar as the Egyptian defendants instead contend that plaintiff's ERISA claim fails on the merits, rather than for lack of FSIA immunity, the Egyptian defendants have defaulted on this argument."  *Id*. at 10-11 (citing Dckt. No. 268, in which the court had refused to consider a statute of limitations

argument because default was set aside solely as to the FSIA issue). The Egyptian defendants have appealed that order. Dckt. No. 314.

Loomis now seeks default judgment against the Egyptian defendants for Loomis's attorneys fees, costs, and amounts paid in defense and settlement of the claims brought against it by Lasheen. Dckt. No. 309. Loomis seeks judgment in the amount of $270,419.65 plus $55,195.06 in pre-judgment interest, for a total of $325,614.71. Those totals are based on $259,768.43 in attorneys fees ($212,327.50 plus $47,440.93 in interest); $9,672.28 in costs ($8,092.15 plus $1580.13 in interest); and $56,174.00 from the payment of four settlement checks ($50,000.00 plus $6,174.00 in interest).[2] Dckt. No. 323 at 2; *see also* Supp. Pierce Decl., Dckt. No. 323-1, ¶¶ 5-8. A hearing was held on the default judgment motion on October 20, 2010, and the parties subsequently submitted briefs as ordered at that hearing. *See* Dckt. Nos. 322-24.

II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk is required to enter default when the fact of default is established by affidavit or otherwise. Fed. R. Civ. P. 55(a). In this case, default was entered by the Clerk on March 2, 2006. Now before the court is Loomis's application for entry of default judgment against the Egyptian defendants pursuant to Fed. R. Civ. P. 55(b)(2).

A. Standard

It is within the sound discretion of the district court to grant or deny a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

////

---

[2] This amount is reflected in Loomis's supplemental brief submitted after the October 20, 2010 hearing. Dckt. Nos. 323, 323-1. The amount includes pre-judgment interest but excludes post-judgment interest, as requested in Loomis's initial motion for default judgment. *See* Dckt. No. 309 (requesting $275,251.60 plus interest [to be calculated]).

6

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Pursuant to 28 U.S.C. § 1608, plaintiffs seeking default judgment against a foreign state must adequately allege that they have "a claim or right to relief." 28 U.S.C. § 1608(e); *Straub v. AP Green, Inc.*, 38 F.3d 448, 452 (9th Cir. 1994). "[Section 1608(e)], which mirrors Federal Rule of Civil Procedure 55(e), codifies in the FSIA context the long-standing presumption that due process requires plaintiffs seeking default judgments to make out a prima facie case." *Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004) (citing *TeleVideo Sys.*, 826 F.2d at 917). Under that section, plaintiffs seeking default judgment must adequately allege that they have "a claim or right to relief." *Id*. "Although § 1608(e) speaks in terms of 'evidence satisfactory to the court,' [we] read § 1608(e) as precluding a default judgment where the claimant does not in his pleadings 'establish his claim or right to relief' even if all of the allegations in the complaint are taken as true." *Id.*, n.17.

B. Entitlement to Default Judgment

This court has already determined that Loomis is entitled to default judgment against the Egyptian defendants. *See* Dckt. Nos. 297, 298. As discussed below, that conclusion is reinforced by the analysis of the instant motion.

7

As noted in the July 22, 2008 findings and recommendations, the *Eitel* factors support a finding that default judgment is warranted. Here, with regard to the first *Eitel* factor, Loomis would be prejudiced if default judgment were not entered in its favor. This case has been ongoing since 2001. Pursuant to the Agreement, up until July 2005, Loomis had been reimbursed by the Egyptian defendants for fees and expenses incurred in defending against Lasheen's claims. Since that time, the Egyptian defendants have been conspicuously absent from the litigation, and now claim that no judgment may be entered against them on the basis of FSIA. The Egyptian defendants' repeated delays and failure to participate in this litigation indicate a strong likelihood that Loomis would encounter significant difficulties in litigating its claims against them, on the merits, in any other action. Thus, the first *Eitel* factor weighs in Loomis's favor.

The second and third factors also weigh in Loomis's favor. As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to the damages. *TeleVideo Systems, Inc.*, 826 F.2d at 917-18. Here, the cross-complaint seeks declaratory judgment establishing that the Egyptian defendants are obligated under the Agreement to reimburse Loomis for all costs, expenses and legal fees incurred by Loomis in defense of the underlying action. Loomis asserts a related claim for breach of that Agreement. The facts as plead by Loomis establish that, under the terms of the Agreement, the Egyptian defendants were obligated to indemnify Loomis for expenses, including attorneys' fees, "occasioned by claims, demands or lawsuits brought against Loomis to recover benefits under [the Plan]." *See* Pierce Decl., Dckt. No. 309-2, ¶¶ 2-3; Ex. J. at 4; *see also Moore*, 384 F.3d at 1090. Indeed, the Egyptian defendants had satisfied that obligation up to and through July 2005. *Id.* ¶ 2. As provided in *Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d at 1172-73, and as discussed in more detail below, Loomis only seeks the attorneys fees and costs it incurred in defending against Lasheen's action.

////

8

The fourth *Eitel* factor, the sum of money at stake, does not weigh clearly in either party's favor. The amount of fees and costs sought by Loomis under the Agreement is significant. While Loomis has established that it is entitled to fees and costs under the terms of the Agreement, the Egyptian defendants face having that amount entered against them as a judgment.

With regard to the fifth factor, no genuine issue of material fact exists because the allegations in the complaint are taken as true. *TeleVideo Systems*, 826 F.2d at 917-18. The sixth factor also weighs in Loomis's favor. The district judge has already considered and denied the Egyptian defendants' motion to set aside the default entered against them.

Finally, only the seventh *Eitel* factor clearly weighs against granting the motion for default judgment. The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits. *Eitel*, 782 F.2d at 1472. Additionally, the court acknowledges that "default judgments against foreign nations are generally disfavored." *Doe v. Qi*, 349 F. Supp.2d 1258, 1273-74 (N.D. Cal. 2004). Nonetheless, where a defendant fails to file an answer to the complaint, a decision on the merits is "impractical, if not impossible." *Elektra Ent. Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (citations omitted). Given the Egyptian defendants' failure to respond to the cross-complaint, and their almost two-year delay in making an appearance after the second entry of default was entered against them, the court finds that this factor should not preclude entry of default judgment. *Id.* at 393. Thus, on balance, the factors weigh in favor of granting Loomis's motion for entry of default judgment. Dckt. No. 297 at 5-7.

The Egyptian defendants make several arguments in opposition to the default judgment motion. Dckt. No. 319. Because the Egyptian defendants are in default and the district judge only set the default aside for the limited purpose of deciding the FSIA applicability issue, the Egyptian defendants should not be heard in opposition to Loomis's default judgment motion, except as to the amount of damages or if they are moving to set aside the default (which they have already sought to do twice in this case). *See Horton v. Sierra Conservation Center*, 2010

9

WL 743849, at *1 (E.D. Cal. Mar. 1, 2010) (citing *Clifton v. Tomb*, 21 F.2d 893, 897 (4th Cir. 1927) (Entry of a defendant's default cuts off his or her right to appear in the action or to present evidence); *see also* Loomis's Reply, Dckt. No. 320 at 2-5 (objecting to the Egyptian defendants' right to oppose the motion and requesting that the opposition to the motion be stricken). Nonetheless, the arguments the Egyptian defendants make in opposition to default judgment are without merit.

The Egyptian defendants argue that default judgment is premature since subject matter jurisdiction has not been fully resolved.  Specifically, they argue that entering the default before a jurisdictional determination is finally made, as to all the parties, would be tantamount to placing the cart before the horse since a finding by the Circuit that the Egyptian defendants are immune from Lasheen's claims would affect their liability to Loomis.  However, the district judge has specifically found, after thorough consideration of the issue, that the Egyptian defendants are not immune from Lasheen's claims. Moreover, and more importantly, the Ninth Circuit has found that the Egyptian defendants are not immune from Loomis's claims. Therefore, jurisdiction is proper as to those claims, which are at issue in the present motion.

The Egyptian defendants also argue that Loomis's application for default judgment does not take into consideration the status of Egypt as a foreign sovereign. Dckt. No. 319 at 4.  They argue that Loomis ignores the fact that the proper statute for considering whether to enter a judgment against a foreign state is 28 U.S.C. § 1608(e), which provides that default judgment may only be entered against a foreign state if the movant "establishes his claim or right to relief by evidence satisfactory to the court."  The Egyptian defendants argue that Loomis cannot establishes its claim or right to relief "by evidence satisfactory to the court" since the Egyptian defendants have many "meritorious defenses" in this case.  However, as noted above, while default judgments against foreign nations are generally disfavored, § 1608(e) really mirrors Federal Rule of Civil Procedure 55(e) and only precludes default judgment if the movant's pleadings do not "establish [the movant's] claim or right to relief" even if all of the allegations in

the complaint are taken as true. *Moore v*, 384 F.3d at 1090. Here, Loomis's allegations sufficiently establish its right to recover its expenses in defending against Lasheen's claims.[3]

The Egyptian defendants further argue that since the case involves foreign states, the court should consider the "broad divergence" in the cultures involved and the "political approaches" to the case, and should therefore consider the Egyptian defendants' defenses to Loomis's claims. Dckt. No. 319 at 6 (citing *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1545 (D.C. Cir. 1987) ("We are also aware that it is in the interest of United States' foreign policy to encourage foreign states to appear before our courts in cases brought under the FSIA. When a defendant foreign state has appeared and asserts legal defenses, albeit after a default judgment has been entered, it is important that those defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments.").) The Egyptian defendants argue that they genuinely believed (and continue to believe) that they were immune from liability under the FSIA and were concerned about losing that immunity. Dckt. No. 319 at 7. Here, this court *has* taken these arguments into consideration but given the procedural history of this case, for the reasons stated above, as well as in the earlier orders addressing default judgment, finds that Loomis has established that it is entitled to default judgment against the Egyptian defendants.

C. Judgment Amount

1. Reimbursement of $50,000

Loomis contends it is entitled to reimbursement of the $50,000 it paid to Lasheen to settle its claims against Loomis. Dckt. No. 309-1 at 4. Loomis seeks the $50,000 as contractual damages for breach of the Agreement. *See Pierce Indemnification Decl*., Dckt. No 309-12,

---

[3] Moreover, the district judge has specifically stated that it is too late for the Egyptian defendants to raise many of the defenses it now seeks to assert. He has also already denied defendants the opportunity to set aside the default, and in doing so, stated that many of the defenses were "clearly frivolous." Dckt. No. 261 at 2.

11

¶¶ 8-9; Ex. G (Dckt. No. 309-13). The Agreement provides:

> [The Embassy of Egypt Cultural and Educational Bureau] retains ultimate responsibility for the grant or denial of claims made under [the Plan] and [The Embassy of Egypt Cultural and Educational Bureau] remains liable for all expenses incident to the Benefit Plan except as specifically assumed in this Agreement by [Loomis]. [The Embassy of Egypt Cultural and Educational Bureau] agrees to indemnify [Loomis] and hold it harmless against loss, damage, and expense, including attorneys' fees, occasioned by claims, demands or lawsuits brought against Loomis to recover benefits under [the Plan].

*Id.*

The indemnification provision provides that Loomis has the right to receive indemnification for any "loss, damage, and expense, including attorneys' fees, occasioned by claims, demands or lawsuits brought against Loomis to recover benefits under [the Plan]." *Id.* That provision would include amounts paid in settlement of claims against Loomis to recover benefits under the Plan. Therefore, Loomis is entitled to reimbursement of the $50,000 it has paid to Lasheen in settlement of its claim against Loomis. *See* Dckt. No. 309-18; *see also* Dckt. No. 297 at 7.

### 2. Attorney's Fees

Loomis seeks reimbursement for its attorneys fees spent in defense and settlement of Lasheen's claim, in the amount of $212,327.50. Dckt. No. 309; *see also* Supp. Pierce Decl., Dckt. No. 323-1 ¶ 5.

In its recent ruling in *Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d at 1172-73, the Ninth Circuit clarified what attorney fees could be recovered in that action. Specifically, the Circuit stated:

> Finally, Loomis and Lasheen move for an award of attorneys' fees and costs. Although the Agreement states that the Egyptian Defendants must "indemnify [Loomis] and hold it harmless against loss, damages, and expense, including attorneys' fees," the Agreement expressly limits this indemnification to loss "occasioned by claims, demands or lawsuits brought against [Loomis] to recover

////

////

12

> benefits under the [Plan]." Under Pennsylvania law,[4] an indemnitee may recover attorneys' fees and costs incurred in the underlying defensive action, but not those incurred during the indemnification action. *Boiler Eng'g & Supply Co. v. Gen. Controls, Inc.*, 277 A.2d 812, 814 (Pa. 1971); *see also Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 117 (3d Cir. 1992). Although the Agreement may give Loomis the right to recover attorneys' fees and costs incurred in defending against Lasheen's action, the contract gives it no right to recover attorneys' fees incurred in the matter before us. Loomis and Lasheen have not pointed to any statutory provision, either within the FSIA or elsewhere, that allows recovery of costs or attorneys' fees in this case. We accordingly deny their request.

Dckt. No. 301; *Embassy of the Arab Republic of Egypt*, 603 F.3d at 1172-73.

In calculating an appropriate attorney fee award, the court must first "calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). This lodestar figure is presumptively reasonable and should only be enhanced or reduced in "rare and exceptional cases." *Id*. In determining the number of hours reasonably expended, a court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citing *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983)). Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. *See Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992), as amended on denial of reh'g, (1993) (quoting *Hensley*, 461 U.S. at 433-34). In determining a reasonable hourly rate, the court considers the relevant community and the prevailing hourly rate in that community for similar services by attorneys of comparable skill and experience. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008).

In the present default judgment motion, Loomis contends that the attorneys fees it seeks were all incurred by Loomis's attorneys for its work in defending against Lasheen's claims from

---

[4] The Agreement provides that it "shall be enforced under the laws of the Commonwealth of Pennsylvania."

13

August 1, 2005 through February 29, 2008, the date the Notice of Appeal was filed. Loomis specifically contends that it seeks no fees or costs incurred in pursuit of its indemnification or in response to the appeal. Dckt. No. 309-1 at 6; Pierce Reasonableness Decl., Dckt. No. 309-2.

Loomis also contends that the fees sought are based on reasonable rates. *See* Pierce Reasonableness Decl., Dckt. No 309-2, ¶¶ 7-10, Exs. A-C. Mr. Pierce provides a detailed comparison of the billing rates charged by Loomis's attorneys to the billing rates charges by attorneys with similar experience in like communities as those rates are published in the legal fees and rate section of the Altman & Weil Surveys of Law Firm Economics, which compiles and reports billing rate data from comprehensive national surveys of law firms around the country. *Id*. ¶¶ 16-24, Ex. E. Loomis argues that based on that comparison, the rates charged by Loomis's attorneys are reasonable, especially since the case involved complex issues and required extensive motion and briefing practice, depositions, and discovery, and since the fees were incurred over a 30-month period.[5] *Id.* ¶¶ 13-28.

Here, Loomis is entitled to recover the attorneys fees it incurred defending Lasheen's action. The undersigned finds that the rates charged by Loomis's attorneys were reasonable.[6] Additionally, contrary to the Egyptian defendants' argument otherwise, the court finds that the fees Loomis seeks were reasonably incurred defending against Lasheen's action. Loomis presents a declaration from partner John Pierce, which was signed under penalty of perjury and which specifically states that he "reviewed all of the invoices submitted to Loomis during the 30 month period between August 1, 2005 and February 29, 2008," and that the hours being sought were only those hours spent in the defensive action. Dckt. No. 309-2, ¶¶ 6-10; Dckt. No. 320-5.

---

[5] The two primary attorneys on the case were partner John Pierce, who had 28 years of experience in 2005, and associate Kathleen Dyer, who had two years of experience in 2005. Pierce's hourly billing rate was $365 in 2005, $395 in 2006, and $420 per hour in 2007. Dyer's hourly billing rate was $190 in 2005, $230 in 2006, and $260 in 2007. Pierce Reasonableness Decl., Dckt. No 309-2, ¶¶ 13-28, Ex. E.

[6] The Egyptian defendants do not contend that the rates charged by Loomis's attorneys were unreasonable. *See generally* Dckt. No. 319.

The undersigned has also carefully reviewed the invoices that were submitted by Loomis and finds that the fees sought were, in fact, spent in defense of the Lasheen action and were reasonable. Therefore, Loomis is entitled to $212,327.50 in attorneys fees.

### 3. Costs

Loomis also seeks $8092.15 in costs incurred prior to the filing of the Notice of Appeal and which are authorized by statute. Dckt. No. 309-1 at 8. Under Federal Rule of Civil Procedure 54(d)(1), a prevailing party may recover reasonable costs as enumerated in 28 U.S.C. § 1920. *See Pierce Reasonableness Decl.*, Dckt. No 309-2, ¶¶ 4(b); 11-12, Ex. D.

Loomis is entitled to costs incurred in the underlying defensive action under Pennsylvania law and the costs Loomis seeks were reasonably incurred in the defensive action.[7] Therefore, Loomis is entitled to the $8092.15 in costs that it seeks.

### 4. Pre-Judgment Interest

Loomis also seeks pre-judgment interest on any judgment amount awarded. Dckt. No. 309-1 at 8; Dckt. No. 323 at 2-3. Here, the Agreement provides that it "shall be enforced under the laws of the Commonwealth of Pennsylvania"; therefore, Pennsylvania law regarding pre-judgment interest applies. "Pennsylvania case law has established that prejudgment interest is awarded as a matter of right." *Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 657 F. Supp. 2d 545, 560 (E.D. Pa. 2009) (citing *Somerset Comm. Hospital v. Allan B. Mitchell & Assocs.*, 454 Pa. Super. 188, 685 A.2d 141 (1996)). According to the Pennsylvania Supreme Court, "[f]or over a century it has been the law of this Commonwealth that the right to interest upon money owing upon contract is a legal right. . . . That right to interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment." *Fernandez v. Levin*, 519 Pa. 375, 548 A.2d 1191, 1193 (1988). Pennsylvania statutory law provides that an injured party who is owed a sum of money as a matter of right may recover prejudgment interest

---

[7] The Egyptian defendants do not challenge the reasonableness of the costs sought by Loomis. *See generally* Dckt. No. 319.

15

at "the rate of interest of six per cent per annum." 41 Pa. Stat. Ann. § 202; *Rizzo v. Haines*, 520 Pa. 484,508 (1989).

Here, the court finds that the amount that Loomis is entitled to pursuant to the Agreement is sufficiently definite, based on the detailed invoices submitted by Loomis, and that pre-judgment interest was available to Loomis from the time the payment was withheld in September 2005. Therefore, Loomis is entitled to the $55,195.06 in pre-judgment interest that it seeks. *See* Felsenfeld Decl, Dckt. No. 323-1, Ex. A.

### 5. Post-Judgment Interest

Loomis's motion for default judgment also sought post-judgment interest from the date of the July 22, 2008 findings and recommendations stating that Loomis was entitled to default judgment through award of judgment.[8] Dckt. No. 309-1 at 8. Loomis argued that "postjudgment interest on an award of attorneys fees accrues upon entry of an order determining that a party is entitled to fees even though the amount of the award is not yet fixed," and that therefore they should be entitled to post-judgment interest as of the date of the July 2008 findings and recommendations suggesting that Loomis was entitled to default judgment.

However, unlike the award of attorneys fees in the cases cited by Loomis, the July 22, 2008 findings and recommendations did not actually award Loomis any attorney fees. In fact, the findings and recommendations, and the order adopting them, actually denied Loomis's motion for default judgment and their corresponding request for attorneys fees. Therefore, Loomis is not entitled to post-judgment interest.

////

////

////

---

[8] As noted above, in Loomis's supplemental briefing submitted after the October 2010 hearing, Loomis did not include any post-judgment interest in the amount requested. Dckt. No. 323.

16

### III. CONCLUSION

In accordance with the foregoing, IT IS RECOMMENDED that:

1. Loomis's application for entry of default judgment against the Egyptian defendants be granted; and

2. Loomis be awarded $270,419,65 in attorneys fees and costs, plus $55,195.06 in pre-judgment interest, for a total of $325,614.71.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: March 7, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE