IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOHAMMED E. LASHEEN,[1]

       Plaintiff,

  vs.

THE LOOMIS COMPANY, et al.,

       Defendants.

———————————————/

AND RELATED CROSS CLAIM.

———————————————/

No. 2:01-cv-0227-LKK-EFB

FINDINGS AND RECOMMENDATIONS

This matter was referred to the undersigned pursuant to Local Rule 302(c)(19).  *See* 28 U.S.C. § 636(b)(1).  On December 5, 2012, the court held a hearing on plaintiff's motion for entry of default judgment against the Arab Republic of Egypt, the Embassy of the Arab Republic of Egypt, and the Cultural and Educational Bureau (collectively, the "Egyptian defendants").  Dckt. No. 345.  Attorney Randy Andrus appeared on behalf of plaintiff; attorney John Hermina appeared on behalf of the Egyptian defendants.  For the reasons stated below, the undersigned recommends that the motion be granted.

---

[1]  Although the court previously granted the application to substitute "Abdallah Mohamed Albadre (A.M. El-Bradry)" as the personal representative of the estate of the decedent and named plaintiff, Mohammed E. Lasheen (*see* Dckt. Nos. 28 and 29), the parties, this court and the Ninth Circuit have continued to use the original caption for this action.  That practice is continued with these findings and recommendations.

I.     BACKGROUND

Plaintiff, Mohammed E. Lasheen ("Lasheen"), was an Egyptian citizen who came to the United States in 2000 as a visiting scholar at the University of California, Davis.  Lasheen was enrolled in the Embassy of Egypt Health Care Benefits Plan ("Plan") provided through the Embassy.  Under the Benefit Services Management Agreement ("Agreement"), The Loomis Company ("Loomis") agreed to provide administrative services for the Plan.

While Lasheen was in the United States, he was diagnosed with liver cancer.  Lasheen's physicians determined that he needed a liver transplant, but when he submitted a claim to Loomis requesting coverage for the procedure, the claim was denied.  Loomis took the position that Lasheen's previous diagnosis with Hepatitis C constituted a preexisting condition with respect to his cancer and related problems, and that the transplant was therefore not covered under the Plan. After unsuccessful attempts to challenge that decision, plaintiff died on December 3, 2000.  Plaintiff is survived by his wife and three children.

Lasheen's estate filed this action in February 2001 against, among others, the Egyptian defendants and Loomis.[2]  Plaintiff asserted claims pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*., and for breach of contract and fiduciary duties.  Compl., Dckt. No. 1.

On April 17, 2001, default was entered against the Egyptian defendants for failure to answer or otherwise timely respond to the complaint.  Dckt. Nos. 21, 22.  On June 5, 2003, the Egyptian defendants moved to set aside the entry of default.  On July 16, 2003, the district judge determined that default was entered prematurely, as these defendants were entitled to sixty days to serve an answer under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, *et seq*.  Dckt. No. 80.  While the court was troubled by the Egyptian defendants' two-year delay in

---

[2] Plaintiff settled his claims with the other named defendants, United Payors & United Providers and BCE Emergis, both of which were dismissed on February 10, 2006.  Dckt. No. 205.

1  moving to set aside the default, the court granted their motion in the interest of deciding the case

2  on its merits.  *Id*.  Accordingly, the defaults were vacated and the Egyptian defendants filed an

3  answer on September 4, 2003.  Answer, Dckt. No. 95.

4          Loomis initially defended against Lasheen's claims, and the Egyptian defendants

5  indemnified it for its legal fees and costs, up to and through July 2005.  When the Egyptian

6  defendants stopped reimbursing Loomis, Loomis continued to defend against Lasheen's lawsuit

7  and provided them with updates regarding the litigation, including notice of a pending settlement

8  with Lasheen.  The Egyptian defendants continued to refuse to indemnify Loomis further, and on

9  November 30, 2005, Loomis filed a cross-claim against them for breach of contract.  The

10 Egyptian defendants did not file an answer or otherwise respond to the cross-complaint.

11         On November 7, 2005, the court allowed the attorney for the Egyptian defendants to

12 withdraw as counsel of record.  The court also directed the parties to appear at a December 19,

13 2005 status conference.  Only counsel for Loomis appeared at that conference.  Dckt. No. 196.

14 In light of the Egyptian defendants' failure to appear, the district judge ordered that the Egyptian

15 defendants' September 4, 2003, answer to the complaint be stricken, and directed the Clerk to

16 enter default against them with respect to both the complaint and the cross-claim.  He further

17 directed both Loomis and Lasheen to move for default judgment.  Dckt. No. 221.

18         Before they could do so, the case was administratively terminated pending an appeal by

19 Loomis with respect to the denial of its summary judgment motion regarding the alleged lack of

20 subject matter jurisdiction over plaintiff's claims.  Dckt. No. 229.  Specifically, Loomis appealed

21 the district court's order finding that it had jurisdiction and that ERISA's exception for foreign

22 plans was not applicable in this case.  Pursuant to the parties' stipulation, the appeal was

23 dismissed without prejudice to reinstatement, pending approval of the parties' tentative

24 settlement agreement.  Dckt. No. 238.  The tentative settlement agreement was conditioned upon

25 Loomis and Lasheen's ability to recover from the Egyptian defendants.

26 ////

On November 6, 2007, Loomis and Lasheen filed a joint special motion requesting the court to find that the Egyptian defendants had no immunity to suit due to the inapplicability of FSIA in this case.  Dckt. No. 239.  On December 5, 2007, the Egyptian defendants suddenly reinserted themselves into the case by filing an *ex parte* request for additional time to oppose the joint special motion.  Dckt. No. 246.

On December 7, 2007, the district judge ordered the Egyptian defendants to show cause why sanctions should not issue for the delay and inconvenience and advised them that, in order to contest the joint motion, they would first have to move to set aside the default previously entered against them.  Dckt. No. 252.

On December 17, 2007, the Egyptian defendants moved to set aside the default and responded to the order show cause.  Dckt. No. 255.  They argued that they were never properly served, and that as a result of such improper service, "a former attaché of the Egyptian Cultural Office was led to believe that counsel had been retained by an insurance broker who ostensibly acted as an intermediary between" it and Loomis.  The Egyptian defendants further argued that they were immune from suit under FSIA.

On January 3, 2008, the district judge found that the Egyptian defendants had waived any objection to service long ago, and granted their request to set aside default only to the extent necessary to allow them to oppose the jurisdictional motion.  The judge denied the motion to set aside default in all other respects.[3]  Dckt. No. 261.

On February 1, 2008, the district judge granted the joint motion filed by Loomis and Lasheen, and found that the Egyptian defendants were not immune from suit given the inapplicability of FSIA in this case.  Dckt. No. 268.  In that order, the court held that the Agreement between Loomis and the Egyptian defendants constituted a waiver of sovereign

---

[3] The district judge explained that he "set[] aside default only with respect to the Foreign Sovereign Immunities Act issue; the Egyptian defendants ha[d] not demonstrated good cause to set aside default as to any other aspect of the case."  Dckt. No. 261 at 3.

immunity as to claims brought by Loomis, and the court further held that the Egyptian defendants' contract with Loomis constituted "commercial activity" outside the scope of the FSIA. *Id.* at 6, 10. The court noted that "the moving parties ha[d] only argued that the [exceptions] applie[d] to the Agreement between Loomis and the Egyptian defendants. Accordingly, the court [did] not reach the issue of whether the Egyptian defendants [were] entitled to sovereign immunity against Lasheen." *Id*. at 10 n.4. Nonetheless, the court granted the joint motion in full.

The Egyptian defendants appealed that order, and Loomis and Lasheen moved for entry of default judgment against them. Dckt. Nos. 274, 275, 282. The undersigned held hearings on the default judgment motions on March 19, 2008 and April 16, 2008, Dckt. Nos. 293, 296, and on July 22, 2008, issued findings and recommendations, recommending that Lasheen's motion for default judgment be denied without prejudice to renewal upon submission of additional briefing and evidence.[4] Dckt. No. 297. Those findings and recommendations were adopted on September 23, 2008. Dckt. No. 298.

On May 10, 2010, the U.S. Court of Appeals for the Ninth Circuit issued an opinion affirming the district judge's determination that the Egyptian defendants were not immune to Loomis's claims because of the commercial activity exceptions to the FSIA. Dckt. No. 301; *Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d 1166, 1169 (9th Cir. 2010). The Ninth Circuit did not reach this court's alternate holding regarding waiver. *Id*. at 1171-72. The Ninth Circuit remanded to this court for a determination as to "whether either the commercial activities or waiver exception permits Lasheen's claims to proceed." *Id.* at 1172; Dckt. No. 302. Therefore, on July 8, 2010, the district judge issued an order setting forth a briefing schedule on the issue. Dckt. No. 306.

---

[4] The undersigned also stated that Loomis was entitled to default judgment against the Egyptian defendants but recommended denial of the motion without prejudice because the court could not determine, from the evidence presented, whether Loomis was entitled to the specific amount it requested.

On August 2, 2010, the Egyptian defendants filed a motion to dismiss and/or for summary judgment. Dckt. No. 307. Lasheen filed an opposition on August 16, 2010. Dckt. No. 308. The district judge held a hearing on the matter on August 30, 2010, and on September 1, 2010, issued an order stating that Lasheen had met his burden of establishing that the Egyptian defendants had waived FSIA immunity. Dckt. No. 312. The court further explained that "Insofar as the Egyptian defendants instead contend that plaintiff's ERISA claim fails on the merits, rather than for lack of FSIA immunity, the Egyptian defendants have defaulted on this argument." *Id.* at 10-11 (citing Dckt. No. 268, in which the court refused to consider a statute of limitations argument because default was set aside solely as to the FSIA issue).

The Egyptian defendants appealed that order. Dckt. No. 314. In July 2012, the Ninth Circuit affirmed this court's order, finding that because Lasheen's claims arise out of the Egyptian defendants' commercial activity, the Egyptian defendants fall under a statutory exception of the FSIA and are not entitled to sovereign immunity. Dckt. No. 341. The Circuit also granted Lasheen's unopposed motion to transfer consideration of attorney's fees on appeal to the district court. Dckt. No. 343.

While the appeal was pending as to Lasheen, Loomis once again sought default judgment. Dckt. No. 309. After a hearing on the motion, the undersigned issued findings and recommendations, recommending that Loomis's application for entry of default judgment against the Egyptian defendants be granted; and Loomis be awarded $270,419.65 in attorneys fees and costs, plus $55,195.06 in prejudgment interest, for a total of $325,614.71. Dckt. No. 326. The findings and recommendations were adopted in full on April 15, 2011. Dckt. No. 329.

////
////
////
////
////

1      Lasheen now seeks default judgment against the Egyptian defendants jointly and

2  severally, in the amount of $604,580.51,[5] Dckt. No. 345, which the Egyptian defendants oppose,

3  Dckt. No. 357.

4  II.   DISCUSSION

5      Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk is required to enter default

6  when the fact of default is established by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  In this

7  case, default was entered by the Clerk on March 2, 2006.  Dckt. No. 224.

8      A.   Standard

9      It is within the sound discretion of the district court to grant or deny a default judgment.

10 *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court

11 considers the following factors:

12            (1) the possibility of prejudice to the plaintiff, (2) the merits of
              plaintiff's substantive claim, (3) the sufficiency of the complaint,
13            (4) the sum of money at stake in the action, (5) the possibility of a
              dispute concerning the material facts, (6) whether the default was
14            due to excusable neglect, and (7) the strong policy underlying the
              Federal Rules of Civil Procedure favoring decisions on the merits.
15

16 *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, once default is

17 entered, the factual allegations of the complaint are taken as true, except for those allegations

18 relating to damages.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.

19 1987) (citations omitted).  However, although well-pleaded allegations in the complaint are

20 admitted by defendant's failure to respond, "necessary facts *not* contained in the pleadings, and

21 claims which are *legally insufficient*, are *not* established by default."  *Cripps v. Life Ins. Co. of N.*

22 *Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th

23

24      [5] The motion originally sought a total judgment of $599,330.51, which included
   $221,001.63 in attorney's fees, expenses, and costs.  However, plaintiff's counsel states that
25 since the filing of plaintiff's initial motion, plaintiff incurred an additional $5,250.00 in
   attorney's fees, expenses, and costs, making the total for such fees and costs $226,251.63 and the
26 total judgment sought $604,580.51.  Supp. Andrus Decl., Dckt. No. 359, ¶ 10.

Cir. 1978)); *accord DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. *Geddes*, 559 F.2d at 560.

Pursuant to 28 U.S.C. § 1608, plaintiffs seeking default judgment against a foreign state must adequately allege that they have "a claim or right to relief." 28 U.S.C. § 1608(e); *Straub v. AP Green, Inc*., 38 F.3d 448, 452 (9th Cir. 1994). "[Section 1608(e)], which mirrors Federal Rule of Civil Procedure 55(e), codifies in the FSIA context the long-standing presumption that due process requires plaintiffs seeking default judgments to make out a prima facie case." *Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004) (citing *TeleVideo Sys*., 826 F.2d at 917). Under that section, plaintiffs seeking default judgment must adequately allege that they have "a claim or right to relief." *Id.* "Although § 1608(e) speaks in terms of 'evidence satisfactory to the court,' [we] read § 1608(e) as precluding a default judgment where the claimant does not in his pleadings 'establish his claim or right to relief' even if all of the allegations in the complaint are taken as true." *Id.*, n.17.

"[D]efault judgments against foreign nations are generally disfavored." *Doe v. Qi*, 349 F. Supp. 2d 1258, 1273-74 (N.D. Cal. 2004) (citing Restatement (Third) of Foreign Relations Law § 459 cmt c (1987) ("Default judgments are disfavored, particularly in suits against foreign states.")). "Courts have gone to considerable lengths to allow default judgments against foreign states to be set aside." *Id.* (citing *Jackson v. People's Republic of China*, 794 F.2d 1490, 1494-96 (11th Cir. 1986) (in action by banks against the PRC for payment of bearer bonds issued by Imperial Chinese Government in 1911, district court properly set aside default judgment for lack of subject matter jurisdiction and where State Department informed the court that permitting the PRC to have its day in court will significantly further United States foreign policy interests)); *First Fid. Bank v. Gov't of Ant. & Barb.*, 877 F.2d 189, 196 (2d Cir. 1989) (reversing district

1  court's denial of motion to set aside default judgment where there were factual issues as to

2  whether U.N. ambassador had apparent authority to obtain loan and waive governments

3  sovereign immunity); *Carl Marks & Co., Inc. v. USSR*, 841 F.2d 26, 27 (2d Cir. 1988) (per

4  curiam) (in action against the Soviet Union to recover on debt instruments issued by the Russian

5  Imperial Government in 1916, district court properly vacated default judgments for lack of

6  jurisdiction).

7          B.        Entitlement to Default Judgment

8          Lasheen moves for entry of default judgment against the Egyptian defendants.  As

9  previously noted, this court has already determined that several of the *Eitel* factors weigh in

10  favor or granting Lasheen a default judgment against the Egyptian defendants.  *See* Dckt. Nos.

11  297, 298.  Specifically, the court found that Lasheen would be prejudiced if default judgment

12  were not entered in his favor, and that therefore, the first *Eitel* factor weighed in plaintiff's favor.

13  The court also found that, to an extent, the second and third factors weighed in Lasheen's favor.

14  However, because the court could not determine the proper amount of the default judgment, the

15  remaining *Eitel* factors were not addressed and the default judgment motion was denied without

16  prejudice to renewal upon submission of additional briefing and evidence.  *Id.*  Lasheen has now

17  renewed his motion for default judgment and has provided much of the additional briefing and

18  evidence that the court initially indicated was lacking.  Dckt. Nos. 345-49.

19          1.        Factor One: Possibility of Prejudice to Plaintiffs

20          The first *Eitel* factor considers whether plaintiffs would suffer prejudice if default

21  judgment is not entered, and such potential prejudice to plaintiffs militates in favor of granting a

22  default judgment.  *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Here, as previously noted,

23  Lasheen would be prejudiced if default judgment were not entered in his favor.  This case has

24  been ongoing since 2001, during which time the Egyptian defendants have twice allowed default

25  to be entered against them.  They have been conspicuously absent from the litigation, and their

26  repeated delays and failure to participate in this litigation indicate a strong likelihood that

9

1  Lasheen would not have another meaningful opportunity to litigate his claims against them on

2  the merits.  Thus, the court finds that the first *Eitel* factor weighs in Lasheen's favor.

3       2.    Factors Two and Three: The Merits of Plaintiffs' Substantive Claims and
                 the Sufficiency of the Complaints

4

5       The court must consider whether the allegations in the operative complaint are sufficient

6  to state a claim that supports the relief sought.  *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*,

7  238 F. Supp. 2d at 1175.  As a general rule, once default is entered, the factual allegations of the

8  complaint are taken as true, except for those allegations relating to the damages.  *TeleVideo*

9  *Systems, Inc*., 826 F.2d at 917-18.

10       a.   29 U.S.C. § 1132(a)(1)(B)

11       When denying without prejudice plaintiff's previous motion for default judgment, the

12  court found that although it appeared plaintiff stated a claim under 29 U.S.C. § 1132(a)(1)(B)

13  against the Egyptian defendants under ERISA for wrongful withholding of plan benefits, and

14  although plaintiff presented evidence showing that the liver transplant he needed was estimated

15  to cost $250,000, and that he incurred other medical expenses in excess of $41,500, it was

16  unclear whether Lasheen was enrolled as a "student" (maximum lifetime benefit of $200,000) or

17  as a "teacher" (maximum lifetime benefit of $100,000).  Therefore, the court could not discern

18  whether the maximum lifetime benefit was $100,000 or $200,000.  *See* 29 U.S.C.

19  § 1132(a)(1)(B) (authorizing a participant or beneficiary to bring a civil action to recover

20  benefits due to him under the terms of his plan, or to enforce his rights under the terms of the

21  plan). Compl. ¶¶ 1, 5, 9-15.

22       Plaintiff once again argues that he is entitled to the plan benefits denied him, pursuant to

23  Section 1132(a)(1)(B).  Plaintiff contends he was a participant and beneficiary under an ERISA

24  plan, and that the Plan had a benefit of $200,000.  Plaintiff incurred medical expenses in excess

25  of $41,500, and had approved surgical expenses for over $250,000, which he was due had

26  defendants not wrongfully denied him his plan benefits.  Dckt. No. 345-1 at 14; Andrus Decl.

10

1   Exs. D, E, G, K.  In plaintiff's reply, plaintiff contends that the evidence, including numerous

2   admissions and statements by the Egyptian defendants themselves, establishes overwhelmingly

3   that plaintiff was enrolled as a "student" with a maximum lifetime benefit of $200,000.  Dckt.

4   No. 358 at 4-7.

5          Defendants argue that the allegations in the complaint, even taken as true, are insufficient

6   to state a claim that supports the relief sought.  Dckt. No. 357 at 9-10, 12.  They contend that the

7   allegations do not support the claim for wrongful withholding of plan benefits under ERISA.  *Id.*

8   Plaintiff alleges that he was a participant and beneficiary under the Plan with the maximum

9   lifetime benefit of $200,000.  *Id.*  However, he was enrolled as a teacher (he was a university

10  professor from Egypt, who came to the United States in 2000 as a visiting scholar at the

11  University of California, Davis) and thus, his maximum lifetime benefit, assuming the evidence

12  shows he is entitled to any, was $100,000.  *Id.*

13         Section 1132(a)(1)(B) authorizes a participant or beneficiary to bring a civil action to

14  recover benefits due to him under the terms of his plan, or to enforce his rights under the terms

15  of the plan.  Plaintiff's complaint sufficiently alleges that the Egyptian defendants withheld

16  benefits under § 1132(a)(1)(B).  Therefore, the only question is the amount of those benefits.

17  Plaintiff has presented sufficient evidence showing that the liver transplant he needed was

18  estimated to cost $250,000, Andrus Decl. Ex. E, Dckt. No. 348 at 2, and that he incurred other

19  medical expenses in excess of $41,500, Ex. G, Dckt. No. 348 at 6-26, Ex. K, Dckt. No. 349 at 4-

20  13.  Plaintiff also offered evidence demonstrating that the maximum lifetime benefit for a student

21  was $200,000 and the maximum lifetime benefit for a teacher was $100,000.  Ex. D., Dckt. No.

22  347 at 22, 23.  Although defendant contends that the allegations in the complaint are insufficient

23  to establish that Lasheen was enrolled as a student (*see* Compl. ¶ 10, providing that "Plaintiff

24  was employed as a visiting Egyptian scholar," which is claimed by defendants to be ambiguous),

25  the allegations *do* establish that defendants withheld benefits under § 1132(a)(1)(B), and plaintiff

26  has offered significant evidence demonstrating that Lasheen was actually enrolled as a student.

1  *See* Reply, Dckt. No. 358 at 4-7, citing Answer, Dckt. No. 95, at 2 ("Defendants admit only that

2  plaintiff was a visiting Egyptian student."); *see also* Ex. X, Dckt. No. 359-1 at 3 (indicating that

3  a "visiting scholar" was covered by a "students insurance plan"); Ex. Y, Dckt. No. 359-1 at 9

4  (containing Lasheen's ID card and documents from the Plan Administrator, and including only

5  the *student* plan); Ex. Z, Dckt. No. 359-1 at 15 (referencing plaintiff as an "SAB" rather than a

6  "teacher"); *see also* Ex. V; Ex. Z; Dckt. No. 194 at 2; Dckt. No. 255 and 256 at 8; Dckt. No. 262

7  at 2; Dckt. No. 307-1 at 7; Dckt. No. 307-3 at 2; Dckt. No. 341 at 7.  The Egyptian defendants

8  have not offered any evidence to the contrary.  Therefore, plaintiff's evidence is sufficient to

9  support the allegation that under the visiting scholar program plaintiff was enrolled as a student

10  and qualified under the Plan for the maximum lifetime benefit for a student.  Accordingly,

11  plaintiff is entitled to $200,000 based on defendants' violation of 29 U.S.C. § 1132(a)(1)(B).

12  b. <u>29 U.S.C. § 1132(c)(1)</u>

13  In denying without prejudice plaintiff's previous motion for default judgment, the

14  undersigned recommended denial of the request for $82,400 in "other appropriate relief and

15  penalties" under 29 U.S.C. § 1132(c)(1) because plaintiff failed to point to a statute requiring

16  defendants to furnish particular documents to plaintiff and did not allege a failure to produce

17  such documents.  Dckt. No. 297 at 11.

18  Plaintiff once again argues that he is entitled to $82,400 in "other appropriate relief and

19  penalties" under 29 U.S.C. § 1132(c)(1).  Dckt. No. 345-1 at 14-17.  Plaintiff contends that he

20  and his counsel made multiple requests for help and for the Benefit Plan information and provide

21  various evidence in support of that claim.  *Id.* at 15-16.  Plaintiff further contends that

22  defendants' Benefit Plan provides that as a Covered Person under the Plan, plaintiff was entitled

23  to "[o]btain copies of all plan documents and other plan information upon written request to the

24  plan administrator . . ."  *Id.* (quoting the "Rights and Protections" section of the Benefit Plan,

25  Andrus Decl. Ex. D).  Based upon 29 U.S.C. § 1132(a)(1)(B) and (c)(1), as well as the Benefit

26  Plan documents, plaintiff is entitled to the $100 a day penalty for defendants' failures and

12

refusals to provide plaintiff the requested Benefit Plan documents and information he and his

attorney requested. *Id.* at 16.  Plaintiff contends that the complaint sufficiently alleges that this

matter arises out of ERISA, 29 U.S.C. §§ 1001, *et seq.*; that the Egyptian defendants failed to

administer the plan, Compl. ¶ 1; that the Egyptian defendants breached and that there were

refusals, *id.* ¶ 2; that the Egyptian defendants were a "fiduciary," *id.* ¶¶ 5-6; that the Egyptian

defendants breached their duties under the Plan, *id.* ¶ 13; that plaintiff had to secure legal

counsel to obtain plan benefits and the Egyptian defendants' compliance, *id.*  ¶ 14; and that the

Egyptian defendants denied plaintiff's rights and breached their fiduciary duties, *id.* ¶ 15.

Defendants contend, on the other hand, that plaintiff's complaint fails to indicate a

statutory provision requiring the Egyptian defendants to furnish particular documents to plaintiff

and it fails to allege that defendants did not produce such documents.  Dckt. No. 357 at 10.  As

such, they argue, plaintiff failed to state a claim under 29 U.S.C. § 1132(c)(1) and failed to place

defendants on notice that plaintiff would be seeking this relief at a later date.  *Id.*

Section 1132(c)(1) provides in pertinent part: "Any administrator . . . who fails or refuses

to comply with a request for information which such administrator is required by this title to

furnish to a participant or beneficiary . . . within 30 days after such request, may in the court's

discretion be personally liable to such participant or beneficiary in the amount of up to $100 a

day from the date of such failure or refusal, and the court may in its discretion order such other

relief as it deems proper. . . ."  Although plaintiff attempts to offer evidence that he and his

counsel made multiple requests for help and for the Benefit Plan information, demonstrating

violations of § 1132(c)(1), the only allegations in the complaint are too general to support

granting default judgment on that claim.  Although the complaint alleges that plaintiff "had to

secure legal counsel . . . in order to obtain plan benefits and Defendants' compliance," Compl.

¶ 14, the complaint does not specifically allege that plaintiff requested the Plan information or

that defendants failed to provide it.  Nor does it cite to § 1132(c).  Therefore, even if the court

assumes the truth of all of the allegations in the complaint, those allegations are insufficient to

state a precise claim for violation of 29 U.S.C. § 1132(c)(1).  Therefore, the court recommends

denying the entry of default judgment on plaintiff's claim under that section and the

corresponding request for $82,400 in "other appropriate relief and penalties."

3.    Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at

stake in relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at

1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal.

2003).  Here, the amount of damages sought are significant since Lasheen seeks a judgment for

$604,580.51.  Therefore, the sum of money at stake weighs against the entry of default

judgment.

4.    Factor Five: The Possibility of a Dispute Concerning Material Facts

Here, the court may assume the truth of well-pleaded facts in the operative complaint

following the clerk's entry of default, and district courts have found that to be a sufficient basis

on which to find that there is no likelihood that any genuine issue of material fact exists.  *See,*

*e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all

allegations in a well-pleaded complaint are taken as true after the court clerk enters default

judgment, there is no likelihood that any genuine issue of material fact exists."); *Philip Morris*

*USA, Inc.*, 219 F.R.D. at 500.  Since the Egyptian defendants are in default, this factor weighs in

favor of granting default judgment.

5.    Factor Six: Whether the Default Was Due to Excusable Neglect

Upon review of the record before the court, the undersigned finds that the default was not

due to excusable neglect.  Indeed, the district judge already considered and rejected this

argument when he denied the Egyptian defendants' motion to set aside the default entered

against them.  Accordingly, this *Eitel* factor favors the grant of default judgment.

////

////

6.    <u>Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  However, district courts have held with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to defend itself in an action.  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 2010 WL 807446, at * 16 (N.D. Cal. Mar. 5, 2010); *ACS Recovery Servs., Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); *Hartung v. J.D. Byrider, Inc.*, 2009 WL 1876690, at * 5 (E.D. Cal. June 26, 2009) (unpublished).  Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy prefers that this case be resolved on the merits—that policy will not by itself preclude granting default judgment.

C.    <u>Amount of Judgment</u>

As discussed above, plaintiff is entitled to default judgment on his claim under 29 U.S.C. § 1132(a)(1)(B) in the amount of $200,000.  He is also entitled to pre-judgment interest and an award of attorney's fees, as discussed below.

1. <u>Pre-Judgment Interest</u>

In 2008, plaintiff requested interest in the amount of the 52-week T-Bill rate, compounded annually, as allowed under § 1961.  Specifically, he sought interest on the $200,000 policy amount at a rate of three percent, compounded annually, for a total of $50,685.27.  The court found that although the complaint's plea for relief included a request for "prejudgment interest at the maximum rate allowed by law," and "attorney's fees, court costs, and all other reasonable costs incurred," Compl. at 5, and although the court "may award prejudgment interest on an award of ERISA benefits at its discretion," because plaintiff provided no support for his assertion that the 52-week T-Bill rate to be applied is three percent, nor did he explain how he arrived at that figure, or whether it should be applied uniformly from the date the action was

////

15

1    initiated to present, or pursuant to some other method, the request for pre-judgment interest

2    should be denied.  Dckt. No. 297 at 11-12.

3          Now plaintiff once again argues that he is entitled to recover a reasonable interest on the

4    $200,000 principle amount which has been deprived.  Dckt. No. 345-1 at 17-20.  Plaintiff

5    contends that fairness dictates that plaintiff be compensated with pre-judgment interest since the

6    Egyptian defendants have knowingly stonewalled and in bad faith refused benefits and

7    information to plaintiff, and because of defendants' wrongful conduct, plaintiff died.  *Id.*

8    Plaintiff contends that defendants have delayed plaintiff's recovery of the benefits he is entitled

9    to by repeatedly making frivolous assertions that ERISA does not apply, even when their own

10   documents clearly state that ERISA does apply, by unsuccessfully asserting other arguments, and

11   by defying the court's orders which resulted in the striking of their answer.  *Id.*  Therefore,

12   plaintiff contends that pre-judgment interest is necessary to fully compensate plaintiff for the

13   losses he has suffered and should be awarded at least in the amount of the 52-week T-Bill rate,

14   compounded annually, as allowed by 28 U.S.C. § 1961.  Plaintiff requests that the judgment

15   include $95,928.88 in pre-judgment interest calculated based upon a three percent rate.  *Id.* at 20.

16         Defendants contend that because it is unclear how plaintiff arrived at the three percent

17   rate, the court should deny plaintiff's request for pre-judgment interest.  Dckt. No. 357 at 12.  In

18   his reply, plaintiff argues that the reason plaintiff sought an interest rate at three percent is

19   because the 52-week T-Bill rate fluctuates and, since this case has been pending for over a

20   decade, the rate has gone above and below three percent.  Dckt. No. 358 at 11; Supp. Andrus

21   Decl., Ex. BB.

22         The court "may award prejudgment interest on an award of ERISA benefits at its

23   discretion."  *Blankenship v. Liberty Life Assur. Co.*, 486 F.3d 620, 627-28 (9th Cir. 2007)

24   (citations omitted).  "Generally, the interest rate prescribed for post-judgment interest under 28

25   U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge

26   finds, on substantial evidence, that the equities of that particular case require a different rate."

*Id.* (internal quotations omitted); *see also* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.  Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.").

Here, the equities weigh in favor of awarding pre-judgment interest, given that this case has been pending for more than ten years and defendants have been given numerous opportunities to defend the action but have declined to do so.  However, the court finds that the interest rate should be calculated based upon the average 1-year constant maturity treasury yield released by the Federal Reserve (which has fluctuated from 3.49% in 2001, to 4.94% in 2006, and below 1% currently).  Plaintiff's counsel conducted that calculation and the amount of interest totals $54,926.  *See* Supp. Andrus Decl., Ex. BB, Dckt. No. 359-1 at 25.  Therefore, the court will recommend an award of $54,926 in pre-judgment interest.

2.  Attorney's Fees

In the court's 2008 denial of plaintiff's default judgment motion, the court found that plaintiff was entitled to recover his attorneys' fees. Dckt. No. 297 at 12-14.  However, the court declined to recommend a judgment including a specific amount for attorneys' fees, but did so without prejudice to renewal upon submission of additional briefing and evidence. *Id.*  Plaintiff once again contends he is entitled to recover attorney's fees, expenses and costs of suit pursuant to 29 U.S.C. § 1132(g)(1).

It is within the court's discretion to grant an award of attorneys' fees and costs in an ERISA case, and absent special circumstances, a prevailing ERISA plaintiff normally should receive such fees. 29 U.S.C. § 1132(g)(1) ("In any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and

1   costs of action to either party." ); *McConnell v. MEBA Medical & Ben. Plan*, 778 F.2d 521, 525

2   (9th Cir. 1985).  The court considers five factors in exercising its discretion under section

3   1132(g)(1): "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the

4   opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing

5   parties would deter others from acting under similar circumstances; (4) whether the parties

6   requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve

7   a significant legal question regarding ERISA; and (5) the relative merits of the parties'

8   positions." *Id.* (quoting *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)).

9          As indicated above, the court previously found that the *Hummell* factors weigh in favor

10  of granting plaintiff his attorneys' fees.  The court stated:

11          Based on the allegations in the complaint, the Egyptian defendants acted in bad
            faith in denying plaintiff coverage due under the Plan. Compl., ¶¶ 10-15.  Indeed,
12          there is some indication that plaintiff's death appears to have been accelerated, if
            not caused, by his inability to receive a liver transplant.  There is nothing in the
13          record to indicate that the Egyptian defendants will be unable to pay an award of
            fees.  With respect to the third factor, an award of fees may discourage the
14          Egyptian defendants from similar conduct (i.e., repeated delays and failure to
            prosecute) under similar circumstances in the future. With regard to the fourth
15          factor, while plaintiff was not seeking to benefit all participants and beneficiaries
            of this particular ERISA plan, the court has nonetheless had to decide relatively
16          novel issues regarding the applicability of ERISA and FSIA with respect to the
            Plan.  The clarification on these issues indirectly benefits others covered by the
17          Plan.  Finally, in light of the record before the court, the Egyptian defendants, to
            the extent they have appeared to defend their position, have not succeeded in that
18          regard.  In sum, the *Hummell* factors weigh in favor granting plaintiff his
            attorneys' fees.

19

20  Dckt. No. 297 at 12-13.  For the same reasons, the court once again finds that the *Hummell*

21  factors support an award of attorney's fees.

22          To calculate attorney's fees in an ERISA action, courts use a two-step hybrid

23  lodestar/multiplier approach.  *Van Gerwen v. Guarantee Mut. Life. Co.*, 214 F.3d 1041, 1045

24  (9th Cir. 2000).  First, the court determines the "lodestar" amount by multiplying the number of

25  hours reasonably expended on the litigation by a reasonable hourly rate.  *Id.*  The party seeking

26  fees bears the burden of documenting the hours expended in the litigation and must submit

18

evidence supporting those hours and the rates claimed. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In determining the appropriate lodestar amount, the district court should exclude from the lodestar amount any hours that are "excessive, redundant, or otherwise unnecessary." *Id.* "Second, a court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Id.*

Here, plaintiff seeks $226,251.63 in attorney's fees,[6] based on the following break-down, Dckt. No. 346 at 6-7:

- 805.90 hours of work performed by lead attorney, Randy Andrus, based on an hourly rate of $250 – $201,475.00

- 21 hours of work performed by Andrus since the initial declaration regarding Andrus' hours was submitted – $5,250.00

- 53.5 hours for associate attorneys Peter Y. Chang and Jason W. Webster, at an hourly rate of $150 – $8,025.00

- 3.7 hours for senior paralegal Karen D. Fisher at an hourly rate of $100 – $370.00

- 36.6 hours for paralegal Mandi L. Logan at an hourly rate of $100 – $3660.00

- 6.8 hours for legal assistant Sunita D. Narayan at an hourly rate of $100 – $680.00

As for the reasonableness of the attorneys' rates, plaintiff has identified the relevant community, and as set forth in the Andrus declaration, the court finds that the billing rates reflect the reasonable market value provided in that community. Andrus Decl. ¶¶ 31-33; Supp. Andrus Decl., Exs. CC, DD (thoroughly addressing the prevailing hourly rate). Accordingly, the court finds that the hourly rates set forth above for lead attorney Andrus ($250) and associate attorneys Chang and Webster ($150), and paralegals Fischer and Logan and legal assistant Narayan ($100)

---

[6] Plaintiff also seeks $6791.63 in costs but does not include them in the judgment amount he requests. Dckt. No. 345-1 at 28. Accordingly, plaintiff's costs are not included in the judgment recommended herein.

are reasonable.  Additionally, given the detailed billing entries that plaintiff provided, the detailed explanations set forth in the Andrus declarations, and the amount of time that plaintiff's counsel was required to expend on this action over the past twelve years, the court also finds that the number of hours expended by each of these attorneys and support staff was time reasonably necessary to prosecute this action.[7]  Dckt. No. 346; Dckt. No. 349 at 98; Dckt. No. 359 at 5-6. Accordingly, the court will recommend that plaintiff be awarded $226,251.63 in attorney's fees.

III.  CONCLUSION

In accordance with the foregoing, IT IS RECOMMENDED that:

1.  Lasheen's application for entry of default judgment against the Egyptian defendants, Dckt. No. 345, be granted in part, as provided herein; and

2.  Lasheen be awarded the following amount against the Egyptian defendants, jointly and severally: $200,000, based on defendants' violation of 29 U.S.C. § 1132(a)(1)(B); $54,926 in pre-judgment interest; and $226,251.63 in attorney's fees, for a total of $481,177.63.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised

////

////

////

////

---

[7] Although defendants argue that plaintiff has failed to show that the attorneys fees claimed are for prevailing claims, defendants have not pointed to specific billing entries that should be excluded because they were based on work on a claim on which plaintiff will not prevail (essentially, the claim under 29 U.S.C. § 1132(c)(1)), nor have they pointed to specific billing entries that are based on work performed on a claim against another defendant (such as Loomis).

that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED:  March 21, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE