UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMED E. LASHEEN, <br><br> Plaintiffs, <br><br> v. <br><br> THE LOOMIS COMPANY, et al., <br><br> Defendants. <br><br> AND RELATED CROSS-CLAIMS. | No. 2:01-cv-00227-KJM-EFB <br><br><br> ORDER |

On September 24, 2013, after extensive litigation before the district judge previously assigned to this case, that judge entered default judgment against defendants Embassy of the Arab Republic of Egypt, the Arab Republic of Egypt, and the Cultural and Educational Bureau (collectively, "the Egyptian defendants") in the amounts of:

> (1) $200,000.00, based on defendants' violation of the Employees Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B);
>
> (2) $54,926.00 in pre-judgment interest, calculated through December 5, 2012; and
>
> (3) $226,251.63 in attorney's fees, calculated through November 21, 2012.

1

Order, Sept. 24, 2013 ("2013 Order"), ECF No. 368; Default J., ECF No. 369; *see also* Andrus Decl., Nov. 21, 2012 ("2012 Andrus Decl."), ECF No. 359; Findings & Recommendations, Mar. 21, 2013 ("2013 F. & R."), ECF No. 363.  The default judgment amount totaled $481,177.63.  *See* Default J. 1.

A number of events followed: the Egyptian defendants appealed the judgment to the Ninth Circuit on October 23, 2013 (ECF No. 370); the Ninth Circuit affirmed the court's order on December 18, 2015 (ECF Nos. 376 & 379); the Ninth Circuit granted plaintiff Mohamed Lasheen's request that attorney's fees on appeal be transferred to the district court under Ninth Circuit Rule 39-1.8 on January 8, 2016 (ECF No. 378); the case was reassigned to the undersigned on January 11, 2016 (ECF No. 377); the parties appeared before this court for a Status Conference on March 3, 2016 (ECF No. 384); the Egyptian defendants filed a petition for writ of certiorari with the Supreme Court on March 16, 2016, case number 15-1179; and plaintiff filed an opposition brief with the Supreme Court on April 20, 2016.[1]

Plaintiff now moves to update and amend the default judgment to add:

> (1) $71,550.42 in attorney's fees, expenses, and costs incurred since November 21, 2012 under 29 U.S.C. § 1132(g)(1); and
>
> (2) $3,672.37 in interest since December 5, 2012 under 28 U.S.C. § 1961(a).

Pl.'s Mot. Amend J. ("Mot."), ECF No. 387; Pl.'s Mem. P. & A. Mot. Amend J. ("Pl.'s Mem. P. & A."), ECF No. 388.  The Egyptian defendants filed an untimely, two-page opposition brief. ECF No. 390 ("Opp'n"); *see* E.D. Cal. L.R. 230(c).  While the Egyptian defendants provided no explanation for the delay in filing their opposition, in the interest of resolving the matter on the merits, the court considers the opposition.  The court submitted the matter as provided by Local Rule 230(g).  As explained below, the court GRANTS plaintiff's motion, as modified.

---

[1] This court has jurisdiction as provided by the Ninth Circuit's Mandate and Order Granting Plaintiff's Motion to Transfer Determination of Attorneys' Fees to the District Court. ECF Nos. 378 & 379.  Defendants' filing of a petition for writ of certiorari does not deprive this court of jurisdiction.  *Cf. Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*, 296 F.2d 215, 215 (5th Cir. 1961); 28 U.S.C. § 1254; Fed. R. Appellate P. 41(d); Sup. Ct. R. 19.

I. <u>DISCUSSION</u>

The factual and procedural history and the basis for the default judgment were discussed at length in the magistrate judge's March 21, 2013 Findings and Recommendations, ECF No. 363, which the prior district judge adopted in full, ECF No. 368.

    A.    <u>Attorney's Fees, Expenses, and Costs</u>

Plaintiff seeks to amend the default judgment to add $66,150.00 in attorney's fees and $5,400.42 in expenses and costs incurred since November 21, 2012. Pl.'s Mem. P. & A. 4. The court first considers whether plaintiff is entitled to attorney's fees on appeal under 29 U.S.C. § 1132(g)(1).

        1.    <u>Whether Plaintiff Is Entitled to Attorney's Fees on Appeal</u>

As the court previously noted, "It is within the court's discretion to grant an award of attorneys' fees and costs in an ERISA case, and absent special circumstances, a prevailing ERISA plaintiff normally should receive such fees." 2013 F. & R. 17 (citing 29 U.S.C. § 1132(g)(1) and *McConnell v. MEBA Med. & Benefits Plan*, 778 F.2d 521, 525 (9th Cir. 1985)). The court also has discretion to award attorney's fees on appeal. *Smith v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal.*, 857 F.2d 587, 592 (9th Cir. 1988). The court considers five factors in exercising its discretion under § 1132(g)(1):

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*McConnell*, 778 F.2d at 525 (quoting *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)). The court previously found that the *Hummell* factors weigh in favor of granting plaintiff his attorney's fees. Findings & Recommendations 12–13, July 22, 2008 ("2008 F. & R."), ECF No. 297; 2013 F. & R. 17–20. Specifically, the court found the Egyptian defendants acted in bad faith in denying plaintiff coverage under his benefits plan, when he needed a liver transplant; plaintiff died on December 3, 2000. 2013 F. & R. 2, 18. Additionally, the defendants appeared

able to pay an award of fees, the award of fees would discourage similar conduct in the future, the court decided relatively novel issues with respect to the plan, and the defendants had not succeeded in defending their position. *Id.* at 18. Since then, plaintiff has successfully defended the default judgment on appeal. *See* ECF No. 376 & 379. For the same reasons previously discussed, and because no special circumstances would make an award of fees unjust, plaintiff is entitled to attorney's fees on appeal under § 1132(g)(1).

In their opposition brief, the Egyptian defendants argue the matter does not advance the interests of the United States or California, "fees are not considered 'costs' under Fed. R. App. P. 39," and "it is extremely doubtful that *any* amounts sought by Plaintiff's counsel herein are recoverable under well-established authority." Opp'n 1–2 (emphasis in original). Defendants do not elaborate on these arguments. *Id.* Whether the matter advances interests of the United States or California is irrelevant to plaintiff's motion. *See id.* at 1. The only case cited by defendants, *Family PAC v. Ferguson*, 745 F.3d 1261, 1264 (9th Cir. 2014), does not support defendants' position. In *Family PAC*, the Ninth Circuit held that the term "costs" under Rule 39 of the Federal Rules of Appellate Procedure does not include attorney's fees recoverable under 42 U.S.C. § 1988. *Id.* at 1269. As a result, the court held that a previous order that "[e]ach party shall bear its own costs of appeal" under Rule 39(a) did not preclude the award of attorney's fees on appeal under § 1988. *Id.* at 1264, 1269. Here, plaintiff properly seeks attorney's fees on appeal under 29 U.S.C. § 1132(g)(1), not under Rule 39. The Ninth Circuit has held that § 1132(g)(1) authorizes recovery of attorney's fees and costs on appeal. *Smith*, 857 F.2d at 592; *see also Canseco v. Constr. Laborers Pension Tr. for S. Cal.*, 93 F.3d 600, 609 (9th Cir. 1996).

Plaintiff is entitled to further attorney's fees under § 1132(g)(1). The court next considers the calculation of costs and fees. The court notes the Egyptian defendants do not dispute the reasonableness of the hours expended, hourly rate, or expenses and costs incurred.

2.  Calculation of Attorney's Fees and Costs

To calculate attorney's fees in an ERISA action, courts use a two-step hybrid lodestar/multiplier approach. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). First, the court determines the "lodestar" amount by multiplying the number of hours

4

reasonably expended on the litigation by a reasonable hourly rate. *Id.* The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In determining the appropriate lodestar amount, the district court should exclude any hours that are "excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Hensley*, 461 U.S. at 434). "Second, a court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Id.*

Here, plaintiff seeks $66,150.00 in attorney's fees for 264.6 hours of work performed by lead attorney, Randy Andrus, since November 21, 2012, based on an hourly rate of $250. Andrus Decl. ¶ 8 & Ex. 7, May 2, 2016 ("2016 Andrus Decl."), ECF No. 388. The court previously found Andrus's requested hourly rate of $250 to reflect the reasonable market value in the relevant community. 2013 F. & R. 19–20. Even though several years have passed since the court's previous determination, Andrus, remarkably, has not increased his hourly rate. *See* 2016 Andrus Decl. ¶ 11. The court again finds this rate to be reasonable, if not below market, based on Andrus's declaration. 2016 Andrus Decl. ¶¶ 11, 14–17, 21–22.

In addition, given the detailed billing entries that plaintiff has provided and the amount of time plaintiff's counsel was required to expend on this action over the past three-and-a-half years, the court also finds the number of hours expended by Andrus was time reasonably necessary to prosecute this action. *Id.* ¶¶ 8, 18 & Ex. 7. Since November 21, 2012, plaintiff's counsel has attended the December 5, 2012 hearing before the magistrate judge; responded to defendants' objections to the Findings and Recommendations (ECF No. 366); briefed arguments and appeared for oral argument on December 8, 2015; engaged in settlement discussions with the Ninth Circuit mediator and counsel; appeared before this court for the March 2, 2016 Status Conference; researched and prepared briefing before the Supreme Court; and prepared this motion. 2016 Andrus Decl. ¶ 17. However, the court deducts the sixteen hours estimated would be required to travel and appear at the scheduled June 3, 2016 hearing on this motion, because the court submitted the matter without a hearing. *See id.* Ex. 7 at 5–6; Minute Order, May 31, 2016, ECF No. 391. This reduces counsel's total hours from 264.6 to 248.6 hours, thereby reducing the

requested attorney's fees from $66,150.00 to $62,150.00.  Plaintiff does not seek to adjust the lodestar using a multiplier, and the court finds it is not appropriate to adjust the lodestar here.  *See Van Gerwen*, 214 F.3d at 1045 ("The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." (citations and internal quotation marks omitted)).

Finally, the requested additional expenses and costs of suit incurred are thoroughly documented in Andrus's declaration and were reasonable and necessary to the prosecution of the action.  2016 Andrus Decl. ¶¶ 8, 19–20 & Ex. 7.  However, the court deducts the $511.96 estimated for travel to Sacramento for the scheduled June 3, 2016 hearing, which was vacated.  *See id.* Ex. 7 at 7; Minute Order, May 31, 2016.  This reduces the total expenses from $5,400.42 to $4,888.46.

The court GRANTS plaintiff's motion, as modified, to add $62,150.00 in attorney's fees and $4,888.46 in expenses and costs to the default judgment.

B. Interest

The court previously found the equities supported awarding pre-judgment interest on the principal balance of $200,000.  2013 F. & R. 17.  Although pre-judgment interest is generally calculated using the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961, *Blankenship v. Liberty Life Assur. Co.*, 486 F.3d 620, 627–28 (9th Cir. 2007), the prior judge found it more appropriate in this case to calculate the pre-judgment interest for each year of the accrual period at a rate equal to the average daily one-year Treasury constant maturity yield for that year, which has fluctuated from 3.49 percent in 2001, to 4.94 percent in 2006, and below 1 percent currently, 2013 F. & R. 17.  The court awarded pre-judgment interest through the date of the hearing before the magistrate judge, December 5, 2012, totaling $54,926.00.  *See id.*; Pl.'s Ex. BB, ECF No. 359-1.

Plaintiff seeks to amend the default judgment to include pre-judgment interest on the principal balance of $200,000 from December 6, 2012 until the date of judgment, September

6

24, 2013, as well as post-judgment interest on the total default judgment of $481,177.63 from September 24, 2013 until the scheduled hearing date for this motion, June 3, 2016. Defendants do not appear to oppose plaintiff's request for payment of interest. *See* Opp'n 2 (opposing only the award of additional attorney's fees).

### 1. Additional Pre-Judgment Interest

The court uses the same methodology that the prior judge used to calculate the pre-judgment interest on the principal balance from December 6, 2012 to September 23, 2013. The average daily one-year Treasury constant maturity for the year beginning December 6, 2012 was 0.134 percent.[2] *See* Board of Governors of the Federal Reserve System, "Selected Interest Rates (Daily) – H.15," http://www.federalreserve.gov/releases/h15/data.htm (last visited Aug. 3, 2016) (average one-year constant maturity Treasury yield); 2016 Andrus Decl. Ex. 9 at 2. Applying this rate to the principal balance of $200,000 from December 6, 2012 to September 23, 2013 yields a total of $209.26 in additional pre-judgment interest.[3]

### 2. Post-Judgment Interest

Title 28 U.S.C. § 1961 provides for the award of post-judgment interest:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment . . . .
>
> (b) Interest shall be computed daily to the date of payment . . . and shall be compounded annually. . . .

Plaintiff is entitled to post-judgment interest under § 1961, but he incorrectly calculates the amount owed. 2016 Andrus Decl. ¶ 10 & Ex. 9. Specifically, plaintiff appears to have conflated the method the court previously used to calculate the pre-judgment interest with

---

[2] The court takes judicial notice of this fact under Federal Rule of Evidence 201(b)(2).

[3] $200,000 principal multiplied by an interest rate of 0.134% equals $268 in annual interest. Because the relevant period is only 285 days, the court multiplied $268 in annual interest by 285 days divided by 365 days, which equals $209.26.

7

the method required for the calculation of post-judgment interest under § 1961. But these two methods differ. Whereas the court previously applied a different interest rate for each year in the accrual period based on the average daily one-year Treasury constant maturity for that year, § 1961(a) requires application of a single interest rate for the entire accrual period based on the weekly average one-year Treasury constant maturity for the calendar week preceding the date of judgment. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 838–39 (1990) (the single applicable interest rate for the week prior to the date of judgment applies for the entire duration of the interest accrual period); Admin. Office of the U.S. Courts, "Post Judgement Interest Rate," http://www.uscourts.gov/services-forms/fees/post-judgement-interest-rate (last visited Aug. 3, 2016) (providing directions on how to determine the applicable interest rate under § 1961(a)). The weekly average one-year Treasury constant maturity for the calendar week preceding the date of the judgment, September 24, 2013, was 0.11 percent.[4] *See* Board of Governors of the Federal Reserve System, "Selected Interest Rates (Weekly) – H.15," http://www.federalreserve.gov/releases/h15/ 20130923/ (last visited Aug. 3, 2016) (Row: "Week Ending - Sep 20"; Column: "U.S. government securities - Treasury constant maturities - Nominal - 1-year"). Accordingly, plaintiff is entitled to post-judgment interest on the default judgment of $481,177.63 from September 24, 2013 until the date of payment, compounded annually, at the single applicable rate of 0.11 percent. 18 U.S.C. § 1961(a), (b). This yields a total of $1,400.71 for the period from September 24, 2013 until June 3, 2016.[5]

---

[4] The court takes judicial notice of this fact under Federal Rule of Evidence 201(b)(2).

[5] The court calculated the interest accrued each year by multiplying the total judgment amount at the beginning of the year by the interest rate of 0.11%:
- 9/24/13–9/24/14: $481,177.63 × 0.0011 = $529.30 [New Total Judgment = $481,706.93]
- 9/24/14–9/24/15: $481,706.93 × 0.0011 = $529.88 [New Total Judgment = $482,236.81]
- 9/24/15–9/24/16: $482,236.81 × 0.0011 = $530.46
  - Therefore, 9/24/15–6/3/16 = $530.46 × (235 days ÷ 365 days) = $341.53
- Total Post-Judgment Interest = $529.30 + $529.88 + $341.53 = $1,400.71

        The court GRANTS plaintiff's motion to add pre-judgment interest in the amount of $209.26 and post-judgment interest in the amount of $1,400.71.  Post-judgment interest will continue to accrue until the date of payment at a rate of 0.11 percent, compounded annually.

## II.    CONCLUSION

        For the foregoing reasons, the court GRANTS plaintiff's motion to amend judgment, as modified, to add $62,150.00 in attorney's fees, $4,888.46 in expenses and costs, $209.26 in pre-judgment interest, and $1,400.71 in post-judgment interest, together equaling $68,648.43.  The amended default judgment is entered in the total amount of $549,826.06.  Post-judgment interest will continue to accrue until the date of payment at a rate of 0.11 percent, compounded annually.

        IT IS SO ORDERED.

DATED:  August 3, 2016.

_____
UNITED STATES DISTRICT JUDGE