UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMED E. LASHEEN,[1] | No. 2:01-cv-0227-KJM-EFB |
| Plaintiff, | |
| v. | ORDER |
| THE LOOMIS COMPANY, et al., | |
| Defendants. | |
| AND RELATED CROSS-CLAIMS. | |

This case was before the court on August 30, 2017, for hearing on plaintiff's motion to compel defendants the Arab Republic of Egypt, Embassy of the Arab Republic of Egypt, and the Cultural and Educational Bureau (collectively, the "Egyptian defendants") to provide responses to post-judgment interrogatories and requests for production of documents, as well as to answer debtor examination questions. ECF No. 421. Attorney Randy Andrus appeared on behalf of

---

[1] Mohamed Lasheen is deceased. The court previously granted the application to substitute "Abdallah Mohamed Albadre (A.M. El-Bradry)" as the personal representative of the estate of the decedent and named plaintiff, Mohamed E. Lasheen. *See* ECF Nos. 28 and 29. Nonetheless, the parties, this court and the Ninth Circuit have continued to use the original caption for this action. *See* ECF No. 368 at 1, n.1. That practice is continued with this order and its references to "plaintiff."

1

plaintiff; attorney John Hermina appeared on behalf of the Egyptian defendants. For the reasons stated on the record, and as explained in further detail below, plaintiff's motion is granted in part and denied in part and the Egyptian defendants are awarded their reasonable expenses in the amount of $1,500.

I.  Background

Plaintiff Mohamed Lasheen was an Egyptian national who came to the United States as a visiting scholar in 2000 and enrolled in the Embassy of Egypt Health Care Benefits Plan (the "Plan"). Loomis, a Pennsylvania-based corporation, contracted with Cultural and Education Bureau ("Bureau") to provide administrative services for the Plan.

While Lasheen was in the United States, he was diagnosed with liver cancer. He requested coverage for a liver transplant, but his claim was denied on the ground that his cancer resulted from a preexisting condition and therefore the transplant was not covered under the Plan. Lasheen was unsuccessful in his attempts to challenge that decision, and in December 2000 he died as a result of his illness.

Lasheen's estate subsequently filed this action against Loomis and the Egyptian defendants, alleging violations of the Employee Retirement Income Security Act ("ERISA"). In September 2013, after extensive litigation, the court entered default judgment against the Egyptian defendants. ECF Nos. 363, 368, 369. The Egyptian defendants appealed to the U.S. Court of Appeals for the Ninth Circuit, which affirmed the entry of default judgment. ECF No. 376.

Thereafter, plaintiff filed three applications (one for each Egyptian defendant) for orders directing the Egyptian defendants to produce for examination persons most knowledgeable regarding assets that may be subject to execution. ECF Nos. 396, 397, 398. The applications were granted and the Egyptian defendants were ordered to appear for a judgment debtor examinations on November 30, 2016. ECF Nos. 400, 401, 402. Two days before the scheduled examinations, the Egyptian defendants objected to proceeding with them and moved for a protective order. ECF No. 406.

/////

Counsel appeared for the November 30, 2016 judgment debtor examinations, but the Egyptian defendants failed to provide a witness for examination. Counsel for the parties met, conferred and agreed to continue the examinations to a later date. The failure to provide the witnesses and agreement to continue the examinations were stated on the record, as was the court's order denying the Egyptian defendant's motion for a protective order. ECF No. 407. Additionally, the court issued written orders for the Egyptian defendants to produce responsive individuals for examination on March 8, 2017. ECF Nos. 412, 413, 414. Prior to the new examination date, plaintiff served each Egyptian defendant with post-judgment requests for production of documents and interrogatories. *See* ECF Nos. 416, 417, 418.

On March 8, 2017, the Egyptian defendants produced for examination Professor Mohamed S.A. Hamza, Cultural Counselor and Director for the Cultural and Education Bureau. Plaintiff contends, however, that the examination was unproductive because the witness either refused or was unable to answer the majority of questions. Further, plaintiff contends that the Egyptian defendants have failed to provide responses to his discovery requests. Accordingly, plaintiff moves to compel the Egyptian defendants to provide a response to the interrogatories and requests for production of documents, as well as to answer debtor examination questions. ECF No. 421.

II. <u>Attorney's Fees</u>

As discussed above, the Egyptian defendants were ordered to produce a witness for a judgment debtor examination on March 8, 2017. The examination was scheduled to commence at 9:30 a.m. ECF No. 412. Although Professor Hamza and the Egyptian defendants' counsel appeared at that time, the examination was delayed because plaintiff did not have a court reporter present. Although a court reporter was eventually obtained, the judgment debtor examination was delayed until approximately 1:30 p.m.

In light of the time wasted, the court ordered plaintiff to compensate the Egyptian defendants for the reasonable expenses they incurred from the four hour delay. Attorney John Hermina subsequently submitted a declaration providing that his hourly rate is $375. ECF No.

/////

431. This rate is reasonable for work performed in this district. Accordingly, plaintiff shall pay the Egyptian defendants $1,500.

III. Motion to Compel

The written discovery requests at issue seek information regarding: (1) each Egyptian defendant's assets and financial accounts that are located in the United States and used for any commercial purpose; (2) commercial debts owed to each Egyptian defendant; (3) entities with whom each Egyptian defendant "does any commercial dealings within the United States"; and (4) "all commercial airline activity" in the United States. Plaintiff also sought similar information at the March 8, 2017 judgment debtor examination. The Egyptian defendants contend, however, that plaintiff's discovery requests are overbroad because he seeks mostly information about assets that are immune from execution under the Foreign Sovereign Immunities Act ("FSIA").[2] ECF No. 427 at 13-19.

The FSIA confers on foreign states two types of immunity. *Republic of Argentina v. NML Capital, LTD.*, 134 S.Ct. 2250, 2256 (2014). First, "a foreign state shall be immune from the jurisdiction of the courts of the United States . . . except as provided in sections 1605 to 1607."[3] *Id.* (quoting 28 U.S.C. § 1604). The FSIA's "second immunity-conferring provision states that 'the property in the United States of a Foreign state shall be immune from attachment[,] arrest[,] and execution as provided in section 1610 and 1611 of this chapter.'" *Id.* (quoting 28 U.S.C. § 1609). This second immunity defense is referred to as the "execution immunity." *Id.* Under section 1610, "property in the United States of a foreign state is subject to attachment, arrest, or execution if (1) it is used for a commercial activity in the United States, . . . and (2) some other enumerated exception to immunity applies, such as the one allowing for waiver, *see* § 1610(a)(1)-

---

[2] The Egyptian defendants also argue that plaintiff's motion to compel should be denied due to a number of procedural deficiencies, including failure to properly serve the discovery requests and lack of compliance with the court's local rules. ECF No. 427 at 9-13. For the reasons stated on the record at the August 31, 2017 hearing, those procedural objections lack merit.

[3] The Ninth Circuit affirmed this court's determination that the Egyptian defendants were not entitled to immunity under section 28 U.S.C. § 1605(a)(2) of the FSIA because they engaged in commercial activity that formed the basis for plaintiff's claims. ECF No. 343.

4

(7)."[4] *Id.* (quotations and citations omitted). As explained by the Supreme Court, there are no other provisions providing additional immunity. Notably, "[t]here is no third provision forbidding or limiting discovery in aid or execution of a foreign-sovereign judgment debtor's assets." *Id.*

While the FSIA does not impose any specific restrictions on discovery, plaintiff is still limited to seeking only relevant discovery under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(1); *see also NML Capital, LTD.*, 134 S.Ct. at 2258 n.6 ("[W]e have no reason to doubt that . . . other sources of law ordinarily will bear on the propriety of discovery requests of this nature and scope, such as settled doctrines of privilege and the discretionary determination by the district court whether the discovery is warranted, which may appropriately consider comity interests and the burden that the discovery might cause to the foreign state."). Thus, the FSIA's exceptions to immunity from execution are still informative of whether plaintiff's discovery requests seek relevant information; e.g. information likely to lead to discovery of executable property. *See id.* at 2257 ("If, bizarrely, [judgment creditor's] subpoenas had sought only information that could not lead to executable assets in the United States or abroad, then Argentina likely would be correct to say that the subpoenas were unenforceable—not because information about nonexecutable assets enjoys a penumbral discovery immunity under the [FSIA], but because information that could not possibly lead to executable assets is simply not relevant to execution in the first place.") (emphasis and quotations omitted).

For purposes of execution immunity, the FSIA draws a distinction between the property of a foreign state and the property of the state's agencies and instrumentalities. *See* 28 U.S.C. § 1610(a)-(b). Section 1610(a) governs immunity from execution of property belonging to foreign states, while subsection (b) governs the immunity provided to property of an "agency or instrumentality" of a foreign state that is engage in commercial activity in the United States. 28 U.S.C. § 1610(a) and (b). Under subsection (a), "[t]he property in the United States of a foreign state is subject to attachment, arrest, or execution if (1) it is used for a commercial activity in the

---

[4] The additional immunities conferred by § 1611 are not relevant to the instant dispute.

5

United States, § 1610(a), *and* (2) some other enumerated exception to immunity applies, such as the one allowing for waiver, see 1610(a)(1)-(7)." *NML Capital*, 134 S.Ct. at 2256 (emphasis in original and quotations omitted). Subsection (b) provides that "any property in the United States" belonging to a foreign state's agency or instrumentality that is "engaged in commercial activity in the United States" is subject to execution if one of three exception to immunity applies. *See* 28 U.S.C. § 1610(b)(1)-(3).

Because the FSIA provides different execution immunity to a foreign state than a state's agency or instrumentality, the scope of discovery depends on how each Egyptian defendant is characterized.

### A. Property of the Arab Republic of Egypt

There is no dispute that the Arab Republic of Egypt ("Egypt") is a foreign state and that the exceptions to execution immunity provided in section 1610(a) apply to it. Thus, Egypt's property that is located in the United States and "used for a commercial activity in the United States" is subject to execution if one of the seven enumerated exceptions to immunity applies. *See* 28 U.S.C. § 1610(a)(1)-(7). Those exceptions to immunity apply where:

> (1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or
>
> (2) the property is or was used for the commercial activity upon which the claim is based, or
>
> (3) the execution relates to a judgment establishing rights in property which has been taken in violation of international law or which has been exchanged for property taken in violation of international law, or
>
> (4) the execution relates to a judgment establishing rights in property--
>
>   (A) which is acquired by succession or gift, or
>
>   (B) which is immovable and situated in the United States: Provided, That such property is not used for purposes of maintaining a diplomatic or consular mission or the residence of the Chief of such mission, or

>   (5) the property consists of any contractual obligation or any proceeds from such a contractual obligation to indemnify or hold harmless the foreign state or its employees under a policy of automobile or other liability or casualty insurance covering the claim which merged into the judgment, or
>
>   (6) the judgment is based on an order confirming an arbitral award rendered against the foreign state, provided that attachment in aid of execution, or execution, would not be inconsistent with any provision in the arbitral agreement, or
>
>   (7) the judgment relates to a claim for which the foreign state is not immune under section 1605A or section 1605(a)(7) (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved with the act upon which the claim is based.

*Id.*

Plaintiff acknowledges that subsection 1610(a) provides the various exceptions to execution immunity. ECF No. 422 at 18-19. However, he fails to identify any specific exception that applies to this case. Instead, he contends, without citation to authority, that he "is entitled to discover all of Egypt's extraterritorial commercial assets." *Id.* at 21. He is mistaken.

As indicated above, plaintiff is only entitled to information that is likely to lead to the discovery of executable assets. *See* Fed. R. Civ. P. 26(b)(1); *NML Capital, LTD.*, 134 S.Ct. at 2258 n.6. Under section 1610(a), only a narrow category of Egypt's extraterritorial property is subject to execution. Specifically, Egypt's property that is "in the United States" and "used for commercial activity in the United States" may be exempt from execution immunity. 28 U.S.C. § 1610(a). But even this limited category of property is subject to execution only if one of seven enumerated exceptions to execution applies. *See* 28 U.S.C. § 1610(a)(1)-(7).

Plaintiff has not shown (or even argued) that Egypt waived immunity from attachment. *See* 28 U.S.C. § 1610(a)(1). Furthermore, none of the exceptions provided in § 1610(a)(3)-(7) appear to have any relevance to this case. The only exception that appears applicable is § 1610(a)(2). Under that exception, plaintiff can only recover from "the property [that] is or was used for the commercial activity upon which the claim is based." Here, the claim is based on ERISA, and any such property would be the assets of the ERISA plan.

/////

7

Egypt concedes that subsection 1610(a)(2) applies to this case. It argues, however, that it has produced all information relevant to the ERISA plan. It explains that the ERISA plan no longer exists, and that its person most knowledgeable provided plaintiff with the name of the bank that previously held funds associated with the plan during the judgment debtor examination. Egypt, however, has not provided responses to plaintiff's interrogatories stating that the bank was the only asset of the ERISA plan, nor is there any indication that it produced any documents related to that account that might show how and where funds from the account were distributed which would bear upon whether proceeds of the account might remain subject to attachment. Accordingly, Egypt has not fulfilled its discovery obligations.

Plaintiff also argues that he is entitled to discover information related to Egypt Air's assets. He contends that under the Fifth Circuit Court's holding *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240 (2002), the airline's assets are subject to execution. Plaintiff misreads the case. In it, the Republic of Congo (the "Congo") borrowed $6.5 million from the judgment creditor's predecessor in interest. *Connecticut Bank*, 309 F.3d at 246. The Congo defaulted on the loan and judgment was subsequently entered against it. *Id*. To satisfy the judgment, the judgment debtor sought to garnish royalties and tax obligations owed by oil companies to the Congo. *Id*. The district court held that the royalties and obligations owed to the Congo did not arise from a "commercial activity in the United States," and therefore were not subject to garnishment. *Id*. at 248.

On appeal, the court's inquiry was focused on whether the royalties and tax obligations were "used for commercial activity" under § 1610(a). The court observed that the FSIA "draws a sharp distinction between the property of states and the property of state instrumentalities . . . The property of states may be attached only if is or was used in commercial activity; the property of state instrumentalities may be attached without such limitation, so long as the instrumentality itself is engaged in commercial activity in the United States." *Id*. at 253. To clarify the distinction, the court provided the following example:

> Consider an airplane owned by a foreign government and used solely to shuttle a foreign head-of-state back and forth for official visits. If the plane lands in the United States, it would not be

8

> subject to attachment or execution. The plane is not "used for" any commercial activity, in the U.S. or elsewhere. It plainly would not matter how the foreign government bought the plane, raised the purchase price, or otherwise came into ownership. Even if the government received the plane as payment from a U.S. company in an obviously commercial transaction, that would not somehow transform the "use" of the plane into a commercial use. Regardless of how the government came to own the plane, a U.S. court could never under the terms of the FSIA confiscate a plane used solely to transport a foreign head-of-state on official business. Attaching the plane and selling it in execution of a judgment would go too far in interrupting the public acts of a foreign state.

*Id*. Based on this example, plaintiff contends that Egypt Air's assets are subject to execution, and thus discoverable, because it is a commercial airline that operates in the United States. ECF No. 422 at 21.

Plaintiff's reliance on *Connecticut Bank* is misplaced. Plaintiff faces an additional hurdle that was not present in *Connecticut Bank*. In that case, the judgment debtor was entitled to execute on the Congo's property that was used for a commercial purpose in the United States because the Congo had *waived* any right to immunity from attachment or execution in the loan agreement that formed the basis for the judgment. *Id*. at 247. Thus, the royalties and tax obligations owed to it by oil companies were subject to attachment if they were "used for a commercial activity." Here, there is no indication that Egypt has waived its right to execution immunity, nor does it appear that any of the other enumerated exception would permit execution on Egypt Air's assets. Thus, Egypt's Air's property is not likely to be subject to execution, and therefore discovery related to this entity's assets is not relevant.

      B.      <u>Property of Embassy of the Arab Republic of Egypt and the Cultural and Education Bureau</u>

Unlike Egypt's status, the parties dispute whether the Embassy of the Arab Republic of Egypt (the "Embassy") and the Cultural and Education Bureau (the "Bureau") are political subdivisions of Egypt, and thus considered a foreign state, or instrumentalities of Egypt. Plaintiff assumes, without any meaningful explanation, that both are instrumentalities and therefore subject to exceptions provided in § 1610(b). The Egyptian defendants contend, however, that the Embassy is a political subdivision of Egypt and that the Bureau is part of the Embassy. The

Egyptian defendants note that district courts outside the Ninth Circuit have held that embassies are political subdivisions, not instrumentalities. *See Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 32-33 (D.D.C. 2014) (finding that the "Embassy of Italy in Washington, D.C., is an 'integral part of a foreign state's political structure,' making it a 'foreign state' for purposes of the FSIA."); *Juste v. Embassy of Haiti*, 2017 WL 713930, at * 2 (D.S.C. Feb. 3, 2017) ("An embassy is a foreign state for purposes of the" FSIA). They also submit evidence indicating that the Bureau is part of the Embassy.

In determining whether an entity is an agency or instrumentality or a political subdivision indivisible from the foreign state, the Ninth Circuit applies the "core functions test." *See Ministry of Defense and Support for Armed Forces of Islamic Republic of Iran v. Cubic Defense Systs.*, 495 F.3d 1024, 1035 (9th Cir. 2007), *rev'd on other grounds Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009). The question under this test is whether the entity "is inherently a part of the political state or a commercial actor." *Id*. Unlike a political subdivision, "[a] typical instrumentality, if one can be said to exist, is created by an enabling statute," has prescribed powers and duties, is governed by a board, and is run as a distinct economic enterprise that is responsible for its own finances and personnel. *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 624 (1983); *see also Cubic Defense Systs.*, 495 F.3d at 1035-36 (applying *Banco* factors to core functions test).

Here, neither party addresses whether the Embassy and/or the Bureau is/are a political subdivision or an instrumentality under this test, nor do they present sufficient evidence to allow the court to make such a determination. In light of this failure, the court will treat both the Embassy and the Bureau as instrumentalities for purposes of plaintiff's discovery motion. Assuming they can be characterized in this manner, they would be subject to the broader exemptions provided in § 1610(b), which in turn promotes the policy favoring broad discovery.[5]

/////

---

[5] As the parties were reminded at the hearing, the question presented on this motion is not the merits of plaintiff's attempt to attach any particular asset, but rather merely the discoverability of the information as to the existence of such an asset(s).

Section 1610(b) provides that "any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall" be subject to attachment if:

> (1) the agency or instrumentality has waived its immunity from attachment in aid of execution or from execution either explicitly or implicitly, notwithstanding any withdrawal of the waiver the agency or instrumentality may purport to effect except in accordance with the terms of the waiver, or
>
> (2) the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a) (2), (3), or (5) or 1605(b) of this chapter, regardless of whether the property is or was involved in the act upon which the claim is based, or
>
> (3) the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605A of this chapter or section 1605(a)(7) of this chapter (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved in the act upon which the claim is based.

28 U.S.C. § 1610(b).

This court previously found that plaintiff's ERISA claim arose out of the Egyptian defendants' commercial activity, and therefore the Egyptian defendants were not entitled to jurisdictional immunity pursuant to 20 U.S.C. § 1605(a)(2). Accordingly, under § 1610(b)(2), plaintiff should be provided discovery information as to any property of the Embassy and Bureau that is located in the United States. The Embassy and Bureau are therefore ordered to provide further responses to plaintiff's discovery requests regarding such assets.

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion to compel (ECF No. 421) is granted in part and denied in part as follows:

    a. Egypt shall provide further responses to plaintiff's Interrogatory No. 1 and Requests for Production No. 1. The response shall be limited to the property related to the ERISA plan.

    b. The Embassy and Bureau shall provide further responses to plaintiff's Interrogatories Nos. 1-6 and Requests for Production of Documents Nos. 1-6.

   c. The Egyptian defendants shall produce a person most knowledgeable for a judgment debtor examination to provide testimony as to the Egyptians defendants' assets that may be subject to execution, as provided herein. The parties shall meet and confer regarding an appropriate date and time for such examination.

   d. The motion is denied in all other respects.

 2. Plaintiff shall reimburse the Egyptian defendants in the amount of $1,500 for the reasonable expenses it incurred on March 8, 2017.

DATED: October 3, 2017.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

12